IDAHO FORWARDING COMPANY, RESPONDENT, v. FIREMAN'S FUND INSURANCE COMPANY, APPELLANT.

INSURANCE.—CONTRACT TO INSURE.—PLEADING.—Where the complaint alleges a contract of insurance already executed, and the evidence tends to show an agreement to execute an insurance policy *in futuro*, the plaintiff cannot recover, although had the complaint alleged a contract to insure and facts been shown sufficient to authorize it, the court would have decreed specific performance of such a contract.

ID.—EVIDENCE.—CONCLUSION OF WITNESS.—Where a witness was asked in reference to a contract of insurance, "how long was the insurance to be," and objected to on the ground that the question called not for what was said but the conclusion of the witness from what was said, and such objection was overruled; *held* that this was error.

ID.—ID.—ADMISSION OF AGENT.—The admission of an agent in order to bind his principal must be both part of the *res gestœ* and authorized by the principal by the admission being in regard to a matter or thing within the scope of the agent's authority.

PRINCIPAL AND AGENT.—AGENT OF BOTH PARTIES.—Where one man, who was agent of a mercantile company and at the same time agent of an insurance company, is told by the manager of the mercantile company to renew certain insurance policies with the insurance company of which he is agent; and was authorized to use the funds of the mercantile company to do so, but negligently fails to do so, after having agreed to do it, no contract of insurance *in præsenti* exists, although he had authority to issue the policies.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Bennett, Marshall and Bradley,* for the appellant.

*Mr. Albert R. Heywood,* for the respondent.

ZANE, C. J.:

The respondent alleged in its complaint that on the 1st' day of February, 1889, in consideration of $46.20 paid as premium, its stock of goods at Hailey, Idaho, was insured in the sum of $2,000 by appellant, for one year from the 13th day of the same month, and that on the 2d day of the following July the goods were destroyed by fire. The plaintiff relies upon a contract *in præsenti,* not a contract to thereafter insure. Albert Kiesel, who had an interest in plaintiff's business, and manager thereof, testified that B. M. Mallory, the agent of both parties, said to him about the last of January or the first of February, 1889, that $5,000 of the insurance would expire; that witness told him to renew the insurance, and that he said he would; that the policies of the North British & Mercantile and Fireman's Fund & Commercial Union were about to expire; that Mallory said he would reinsure him in the Fireman's Fund for $2,000, in the North British & Mercantile for $1,000, and in the Commercial

Union for $2,000. Witness also said that the insurance
was to be for one year, and that the premium was to be
$2.20 per $100.   B. M. Mallory, the agent of both plaint-
iff and defendant, testified that, soon after his employ-
ment as bookkeeper, Albert Kiesel, manager of the plaint-
iff, instructed him to renew all policies upon expiration,
and to keep the amount of insurance to $14,500, and to
pay premiums 60 days after issuance of policies; that he
was under the impression that the lapsed policies had been
renewed; that his intention was to renew them, but he
negligently had allowed them to lapse; that, as cashier of
the plaintiff, he was authorized to use its funds to pay
premiums, and was directed by plaintiff's manager to do
so, and to keep the insurance to $14,500.   The premium
was not paid, but was tendered six days after the stock
of goods had been consumed by fire.

The proof is that Mallory, who was cashier of the
plaintiff, and who was authorized and instructed by its
manager to have its stock of goods insured, and who was
also the agent of the defendant, and authorized by it to
make contracts of insurance and to issue policies, neg-
lected to do as he was instructed, and what he promised
plaintiff's manager he would do.   He had an impression,
as he said, that the property was insured, and neglected
to issue the policy.   He was authorized to appropriate
plaintiff's money, in his hands as its cashier, to the pay-
ment of the premium, but neglected to do that.   If he
had done so, he would have acted as plaintiff's agent in
so doing.   At the time of the conversation, about the 1st
of February, relied upon to establish the contract de-
clared on, insurance then on the property to be renewed
had not expired.   It did not expire until the 13th day
of that month.   It was the duty of Mallory, under the
instructions of plaintiff's manager, to continue the risk
after the old policy expired by reinsuring, but the evi-
dence shows that he neglected to do this.   For the fail-

ure to follow plaintiff's orders the defendant cannot be held responsible. It is apparent that Mallory failed to make the contract that he was authorized and instructed by plaintiff to make. An agreement to make a contract at a future day is not the equivalent of the one to be made, or of a present contract, though all the terms to be put in the latter are agreed upon. If one of the parties to the first agreement refuses to bind himself when the time comes, the court may compel a specific performance of it, if from the facts it would be equitable to do so; and if performance is decreed a judgment may be entered in the same case for the amount found to be due the plaintiff on the contract, if any amount is then due the plaintiff by its terms, or an action may be instituted on it if either party refuses to comply with it. By the language used on the 1st of February the defendant did not assume the risk the plaintiff contends that he did. That language had reference to insurance thereafter to be made.

The plaintiff has set up in his complaint a contract *in præsenti.* This action is not for specific performance. *Taylor* v. *Insurance Co.,* 47 Wis. 366, 2 N. W. Rep. 559, and 3 N. W. Rep. 584; *Sargent* v. *Insurance Co.,* 86 N. Y. 626; *Dinning* v. *Insurance Co.,* 68 Ill. 414; *Markey* v. *Insurance Co.,* 118 Mass. 178; *Myers* v. *Insurance Co.,* 121 Mass. 338; *O'Reilly* v. *Corporation,* 101 N. Y. 575, 5 N. E. Rep. 568; *Commercial National Marine Ins. Co.* v. *Union Mut. Ins. Co.,* 19 How. 318, cited by counsel for respondent, was an equity cause to compel the specific performance of a contract to make re-insurance. The court in that case held that the bill for the specific performance of the contract could be maintained, and it having been admitted that defendants would be liable as for a total loss on the policy if issued in conformity with the contract, and that the amount was then payable, and that no further question remained to

be tried, it was proper to decree the payment of the money which would have been payable on the policy if it had been issued. In *Sanborn* v. *Insurance Co.*, 16 Gray, 448, and *Putnam* v. *Insurance Co.*, 123 Mass. 324, relied upon by respondent's counsel, it was held that the evidence tended to show that the risk was to commence at the time the contracts sued on were made. The facts of these cases are not analogous to the case in hand. In them the insurers assumed the risk by the contracts sued on.

After the witness Albert Kiesel had narrated the conversation between himself and Mallory on the 1st day of February, plaintiff's counsel propounded this question: "Now, if you know, how long was the insurance to be?" To which counsel for defendant objected on the ground that the conclusion of the witness was called for, and not the language used, or the substance of it. The objection was overruled by the court, and defendant excepted. This ruling is assigned as error. The intentions of the parties to contracts must be ascertained from the language used in them, or in making them, in the light of the surrounding circumstances, and this rule applies to the interpretation of verbal contracts as well as to written ones. It was improper to call for the conclusion of the witness as to the term of the insurance, or as to the premium to be paid. Those facts should have been found from the language used by the contractors. They could not be ascertained from the inferences and conclusions of the witness.

Witnesses were permitted, over the objections of defendant's counsel, to testify to admissions of the agent Mallory, made long after the alleged contract was made, to the effect that the property was insured. To the ruling of the court in overruling such objections the counsel for the defendant excepted, and assigns the same as error. A witness may testify to the language of an agent in making an oral contract, because such language is within

the agent's authority. Being authorized to make. the contract, his language in making it is authorized by the principal. . But authority to make a contract does not empower the agent at a subsequent time to admit away his principal's rights. The admissions of an agent are admissible so far as the principal has authorized them to be made, and no further. Greenleaf says: "But it must be remembered that the admission of the agent cannot always be assimilated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending, *et dum fervet opus*. It is because it is a verbal act, and part of the *res gestæ*, that it is admissible at all; and therefore it is not necessary to call the agent himself to prove it." 1 Greenl. Ev. § 113. The court said in the case of *Railroad Co.* v. *O'Brien*, 119 U. S. 99, 7 Sup. Ct. Rep. 118: "Referring to the rule as stated by Mr. Justice Story in his treatise on Agency (§ 136) that, 'where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting a part of the *res gestæ*.' The court, speaking by Mr. Justice STRONG, said: 'A close attention to this rule, which is of universal acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified or explained either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done, or how he had done it, and his declaration is no part of the *res gestæ*.'" For the reasons above indicated the court is of the opinion that the judgment of

the court below should be reversed, and that a new trial should be granted.

ANDERSON, J., and BLACKBURN, J., concurred.