MARGARET PHELPS *et al.*, Appellees, v. J. T. JAMES *et al.*, Appellants.

1. **Evidence:** DECLARATIONS OF AGENT AFTER TERMINATION OF EMPLOYMENT. Where a husband two days after closing a contract for an exchange of real estate, as agent for his wife, wrote to the lessee in possession of the land sold informing him of the trade, and stating that the grantee had purchased the land upon the faith of a certain guaranty prepared by one F., *held*, that said letter having been written without the knowledge or consent of the wife, it was not competent evidence against the wife in an action against both the husband and wife for damages on account of false representations as to the character of said land.

2. ———: ———: EXPLANATION. Said letter having been admitted in evidence, *held*, that the husband should have been permitted to show the circumstances under which it was written, and what was meant by it.

*Appeal from Polk District Court.*—HON. CHARLES A. BISHOP, Judge.

TUESDAY, OCTOBER 18, 1892.

ON the twenty-first day of May, 1887, the parties, through their respective agents, entered into a written

contract, by the terms of which the plaintiffs exchanged
a certain hotel property in Indianola, Iowa, for two
hundred and twenty acres of land in Lee county, Iowa,
the property being properly identified in the agree-
ment.  It is not necessary to set out the agreement.
It is sufficient to say that it provides that each shall
furnish a good title, but nothing is said therein as to
the character, condition, or quality of the land in Lee
county.  In the agreement, near the close, is the fol-
lowing language: "The above is an exchange of said
property without regard to valuation of said property."
This action is brought to recover damages because of
false and fraudulent representations as to the character
of the land, and the failure of a certain guaranty in
regard thereto, made to induce the purchase.  The
answer is a denial of any guaranty or false representa-
tions, and contains express averments that the exchange
of properties was made upon an understanding that
each party took the property relying "on his own judg-
ment, and at his own risk," and that it was to effectu-
ate such purpose that the clause of the agreement
above quoted was inserted.  The trial resulted in a
verdict and judgment for plaintiffs, from which
defendants appeals.—*Reversed.*

*Bosquet & Earle,* for appellants.

*A. A. McGarry* and *Read & Read,* for appellees.

GRANGER, J.—I.  This cause was once before in
this court, and the case is reported in 79 Iowa, 262.

1. EVIDENCE: declarations of agent after termination of employment.    The land in Lee county was formerly
owned by one Thomas Flood, and the
following, designated as the "Flood Guar-
anty," is important in connection with a
question as to the admissibility of evidence:

"I guaranty and represent that my two hundred
(200) acre farm in Lee county, Iowa, Van Buren town-

ship, is all under fence composed of wire and rails, in good condition; that there are one hundred (100) acres or over under plow—balance, good timber, blue-grass,—and that all of said farm is susceptible of cultivation; and that part of this farm is good second bottom, balance rolling, but not rough; all of which has good, productive soil. The buildings and improvements are as follows: One farm dwelling, one and a half (1½) stories, six rooms in good repair; good granary, smokehouse, stable for four (4) horses, and haymow; also, one other small house, and one two-story frame feed mill, almost new,—size of building 20x30 feet; good pair of French stone burrs; cornsheller, new, and all necessary machinery to run it; good boiler and engine, all in good repair; running water for stock all the year around, spring and creek. The farm is located on the main county road, within one and a half (1½) miles of the K. & D. M. R. R. station, and one and a half (1½) miles from Des Moines river. And I also guaranty said farm not to overflow from the Des Moines river.

"[Signed]          THOMAS FLOOD."

This paper was put in evidence by the plaintiffs under a claim that it was "turned in" with other papers at the time of making the contract of exchange as a part of the representations and guaranties as to the character of the land, and it is set out in the petition as being the guaranty made, and is denied by the answer, it being the contention of the defendants that they refused to indorse or sanction the instrument as a part of the transaction. O. M. James is the wife of her codefendant, J. T. James, and the title to the Lee county land was in her. The court instructed the jury that J. T. James was the agent for his wife, and that she was "bound by his acts, knowledge, and conduct in respect to any such transactions," referring to the sale of the land in question, and we think the record justi-

fies the instruction.

One Enos Reed was a tenant on the land in question, having a leasehold interest therein terminating March 1, 1888. On the twenty-third day of May, 1887, the following letter was written:

"DES MOINES, IOWA, May 23, 1887.

"*Enos Reed, Esq.*,

"DEAR SIR: I placed the farm in the hands of real estate men here to trade off for me, and they have just closed a trade with a Mr. Phelps, and I have assigned over to him the lease and your note. I have never seen Mr. Phelps myself, but presume he will come down there soon to look over his farm. He bought it on Mr. Flood's written representation, and I hope Mr. Phelps will be pleased with it, and find the farm in every respect fully as good as Mr. Flood represented it to be. Yours, truly,

"O. M. JAMES."

"P. S. My brother sends his regards to yourself and wife, and says he don't want you to ever tell anybody he was down there, and for you not to forget about his and your private understanding about the lease. He says you will know what he means by this. O. M. J."

This letter was in fact written by J. T. James, without the knowledge of his wife. It will be observed that her name appears to the letter. The letter was admitted in evidence. Objections were interposed by the defendants jointly, and by O. M. James specially, "because the same is merely a narrative of a past transaction, and in no way binding upon her." Against the objections the letter was admitted, and this action of the count is assigned as error. It will be observed that the letter was written two days after the transaction was completed, and is in no way connected with its consummation. It is, of course, no more binding on O. M. James than it would have been

VOL. 86—26

if signed by J. T. James, for it was only the act of an agent. This question seems so vital in the case that it is deserving of somewhat careful consideration.

The ruling of the court can only be sustained on the theory that the statements and declarations of the letter are such as, when made by an agent, will bind his principal. The rule governing the admission of such evidence is quite concisely stated by Mr. Justice REED in *McPherrin v. Jennings*, 66 Iowa, 622, as follows: "The ground upon which the declarations or admissions of an agent are admitted in evidence against his principal is that whatever he does or says in reference to the business in which he is at the time employed, and which is within the scope of his authority, is done or said by the principal. *United States v. Gooding*, 12 Wheat. 460; *American Fur Co. v. United States*, 2 Pet. 358; *Stiles v. Western Railway Co.*, 8 Metc. (Mass.) 44; *Corbin v. Adams*, 6 Cush. 93; *Morse v. Connecticut River Railway Co.*, 6 Gray, 450; 1 Greenleaf on Evidence, section 113. Under this rule the plaintiff was entitled to introduce evidence of the declarations in question only in case he had established that the person who made them was in fact the agent of the defendant, that they related to a matter within the scope of his employment as such agent, and that at the time of making them he was engaged in the performance of some duty with reference to the matter to which they related." It will readily be observed that a very essential fact is wanting, under the rule stated, to render the declarations of J. T. James in the letter competent, viz., that "he was engaged" at the time of making them "in the performance of some duty with reference to the matter to which they related." Mr. Chief Justice DILLON also clearly states the rule in *Sweatland v. Ill. & Miss. Telegraph Co.*, 27 Iowa, 433.

The general rule in argument is not controverted,

but it is urged that "the declarations of an agent are admissible if they spring from the transaction and controversy, and to qualify, characterize, and explain it, and are voluntary and spontaneous, and are made at the time, or so near as to preclude the idea of a deliberate design on the part of the agent." The appellees, in support of this, cite Mechem on Agency, section 715. The preceding section contains some quite significant language in view of the particular facts of this case. It is there said: "And the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance, or so soon after as to be in reality a part of the transaction; or, to use the common expression, they must have been a part of the *res gestæ*. If, on the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are not admissible. In such a case they amount to no more than a mere narrative of a past transaction, and do not bind the principal. The reason is that while the agent was authorized to act or speak at the time, and within the scope of his authority, he is not authorized at a subsequent time to *narrate what he had done or how he had done it.*" We have italicized the concluding words of the quotation to indicate their close relation to the contents of the letter, which was a mere narrative of what had been done, and how it was done. The section cited (715) states, that the authorities are conflicting as to what constitutes a part of the *res gestæ*, and that the question is one of difficulty; that the doctrine of the later cases is that each transaction is to be judged by its own peculiar facts, without conclusive regard to a fixed interval of time, and with more regard to the question whether the declarations or

admissions seem to have been voluntary, and spontaneously made, under the immediate influence of the principal transaction, and are so connected with it as to characterize or explain it. The author cites numerous cases where declarations have been excluded, and others where they have been admitted, illustrating the rule he has stated, and while there is not exact harmony of thought in the reasoning of the cases, or as to the governing rule, there is no case with facts so similar as to sustain the rule claimed by the appellee in this case, while nearly if not all the cases sustain the opposite rule.

There is, however, a claim that this letter is admissible for other purposes, and we think the claim has support in the record. But the manifest purpose of its introduction and use was to make the declaration therein, as to the Flood guaranty, binding upon Mrs. O. M. James as her admission. The jury could have received it in no other light. The letter was certainly in respect to the sale of the land, and the court said to the jury that J. T. James was her agent, and that she was "bound by his acts, knowledge, and conduct in respect to any such transaction." The letter contained the admission that the land was sold upon Mr. Flood's guaranty, and the effect was to bind her by the admission. An instruction was given relative to letters written by the defendants to Enos Reed, and how they were to be considered in some respects, but, there is nothing bearing upon the question of the right of J. T. James, as agent, to bind her by his declarations after the transaction was completed. The admission of the letter, without some instruction, saving the rights of O. M. James, was error.

II. After the letter was in evidence, the defendants sought to explain why the statement in the letter in regard to the Flood guaranty was made, and the explanation was substantially as

2. —: —: explanation.

follows:    A. M. Johnson was the agent for the defend-
ants in making the contract of sale.   The defendants
desired to show by J. T. James that, after the transac-
tion and before he wrote the letter, he had a conversa-
tion with Mr. Johnson in which Johnson told him that
the plaintiffs wanted the "Flood guaranty" indorsed over
to them, but that he refused to do so and refused to make
any representations as to the land, and told them in sub-
stance that they must "take the farm as they found it."
Johnson also told James that Phelps had the written
recommendation known as the "Flood guaranty."   They
also desired to show by J. T. James that he meant by
the expression in the letter "he bought it on Mr.
Flood's representation," that he took it relying on Mr.
Flood's representation and not on theirs, the defendants'.
A careful reading of the letter will show that it could
bear such a construction.   It was surely error to refuse
the explanation.   The exclusion of the explanation
intensified the purpose of the letter, as showing the
admissions of Mrs. James, for the defendants were not
permitted to give it any other effect.   With the
Flood guaranty and the letter in evidence, with the
explanation excluded, the court could well have said to the
jury that the land was sold under the terms of the Flood
guaranty, for there could not well have been any other
conclusion.   There is no conflict of authority as to the
right to make such an explanation.   Even if the letter
had been written by O. M. James, she should have been
permitted to show the circumstances under which she
made the statement and what she meant by it.   It will
be borne in mind that this letter was not acted upon by
the plaintiffs in making the contract.   It was merely
a question of admission after the contract was made.
In *Mickey v. Burlington Insurance Co.*, 35 Iowa, 174,
this language is used:   "If the language of a witness,
either written or oral, is introduced to establish an
admission, he has the privilege of giving his under-

standing of its import—of stating its true meaning in the connection as used by him." The case refers to 1 Greenleaf on Evidence, section 462, note 1.

We discover no other assignment of error which we think it necessary to consider, in view of a new trial, and the judgment is REVERSED.