FIDELITY & CASUALTY CO. v. HAINES.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1901.)

No. 1,482.

1. RES GESTÆ.
A statement which is detached from the material act pertinent to the issue, and which constitutes a mere narrative of a past transaction, is not a part of the res gestæ, but is hearsay, and incompetent as evidence.

2. INSURANCE—RES GESTÆ—ADMISSIONS OF AGENT AFTER ALLEGED CONTRACT.
The admission by the local agent of an insurance company on the day after the alleged making by him of an oral contract of insurance, that the claimant was insured, is not a part of the res gestæ, and is hearsay evidence as against his principal.

3. SAME—AGENCY—OPINION OF AGENT—EVIDENCE AGAINST PRINCIPAL.
The opinion or conclusion of an agent relative to the legal effect of acts and transactions is not binding upon his principal unless the latter has authorized his agent to form and express an opinion on his behalf. A statement by the agent of an insurance company that a claimant is insured is such an opinion, and is incompetent evidence against his principal.

4. SAME—LOCAL AGENT'S AUTHORITY TO ADJUST ALLEGED LOSSES.
A stipulation in the contract of appointment of a local insurance agent that he shall receive as his compensation for all his services, including those adjusting losses, a certain commission on the premiums

he secures, and that he will render these services, does not authorize him to adjust alleged losses or to admit the liability of his principal therefor, unless he is otherwise empowered so to do.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

James C. Jones and H. C. Smyth (William C. Jones and Wash Adams on the brief), for plaintiff in error.

Edward L. Scarritt (Thomas Dolan, John K. Griffith, and Elliott H. Jones, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge. This was an action upon an oral contract to insure against burglary. There are two classes of such insurance. One consists of the insurance of personal property while in a safe, and is denominated safe-burglary insurance, while the other comprises the insurance of such property when it is not within a safe, and is called store or residence burglary insurance. The rates and contracts of the two classes of insurance differ. The controversy here arises over an alleged oral agreement to make a contract of safe-burglary insurance whose existence was denied by the company. At the trial it appeared that one Bigley was the local agent of the company at Joplin, in the state of Missouri, to procure safe-burglary insurance according to the rules and instructions contained in the company's manuals and rate books, but that he had no authority whatever to procure any insurance, make any contracts, or do any other acts relative to store-burglary insurance. There were two issues,—whether Bigley's conversation with the plaintiff related to safe-burglary insurance or to store-burglary insurance (the plaintiff testified that it related to the former, Bigley testified that it related to the latter); and whether or not the conversation was a contract of insurance or a mere negotiation preliminary to a written contract to be subsequently issued.

At the opening of the trial, without any evidence that Bigley was actually or apparently authorized to make any contracts or do any acts for the company, the defendant in error proceeded to testify that he had a conversation with him relative to safe-burglary insurance. Objection was made to this testimony that it was incompetent without proof of the authority of Bigley. The court so held, but nevertheless overruled the objection with the remark that he would strike out the testimony if the authority of this agent was not established. Thereupon the defendant in error testified, in effect, that on June 29, 1899, Bigley solicited him to take safe-burglary insurance, stated the rates, the amount of insurance he was to have, the length of the term, and the amount and time of payment of the premium, and made a memorandum of various facts about his stock of goods, from which Haines expected a policy of insurance to be forwarded to Bigley at Joplin, Mo., by some general agent of the company at St. Louis, to be delivered to the defendant in error. On

the night which followed the day of this conversation the safe of the defendant in error was burglarized. Two witnesses were permitted to testify that on the following day Bigley admitted to them that the defendant in error was insured. This testimony was expressly objected to on the grounds that the agent's authority had not been shown, and that it was only his conclusion, by which the company could not be bound. The court below held that the testimony was incompetent to prove a contract, but nevertheless admitted it "for the purpose of corroborating, if the testimony is to that effect, the witness Haines in regard to the conversation had between himself and Bigley." This ruling is assigned as error, and it is difficult to perceive how this testimony could corroborate Bigley without tending to show that the contract to which he testified was made, and without thereby becoming incompetent, even in the view of the court below. The ordinary and logical sequence of proof required that the power of the agent should be established before his acts and admissions were received as evidence against his principal. Nor is the case of the defendant in error improved if the concession be made that the ruling upon the objection of want of authority went merely to the order of proof, and was therefore discretionary. If the authority of Bigley to make the contract had been previously proved, the fatal objections would still remain that the testimony of these witnesses was mere hearsay, the simple narration of what Bigley said the day after making the agreement, and that this was nothing but his individual opinion or conclusion, which he was neither authorized to make, to form, or to express for his company. If any contract to insure was ever made, it was made on June 29th, before the burglary, and while the stock was in the possession of the defendant in error. When Bigley and Haines parted on that day, the agreement upon which this action must stand either was or was not in existence. No story that Bigley subsequently told, no opinion that he afterwards formed or expressed, could either make or destroy, strengthen or weaken, the agreement. When he made this statement that Haines was insured on the day after the burglary, he was not engaged in negotiating this contract. What he said was not a part of things done in closing the agreement. It did not even rise to the dignity of a narrative of a past event. It was nothing but his conclusion or opinion as to the legal effect of the things that had been said and done by the company, Haines, and himself at some time before the burglary.

An effort is made to escape from this conclusion on the ground that Bigley was the agent of the company to adjust this loss, that he was investigating it preparatory to adjusting it, and was therefore acting within the scope of his authority when he made the statement under discussion. But the only evidence of Bigley's authority to adjust the loss consists of the fact that in his contract of appointment it is recited that the company has appointed him its agent for Joplin, Mo., and vicinity; that it is agreed that his compensation for all services rendered by him in procuring insurance, collecting premiums, adjusting losses, rendering accounts, and performing generally the duties of agent, shall be a certain commission on the

net premiums received on all the policies issued by him under the contract; that he agrees to perform such services, and to obey the rules and instructions contained in the company's manuals and rate books, with reference to the conduct of the business as such agent; and that such rules and instructions may be modified in writing by the proper officer or agent of the company. But this contract must be read in the light of our common knowledge that local insurance agents are not generally adjusters, and that they have authority to adjust losses only when specially directed so to do. The meaning of the agreement regarding the adjustment of losses was that the agent, when specially directed to do so, would render his services in adjusting losses in consideration of the commission specified in the contract of appointment, and without other charge. It gave him no authority to render unrequested services concerning or to adjust alleged losses without an express request to do so. Much less did it empower him to bind the company by an admission of a contract and a loss which the corporation denied. Its only effect was to entitle the company to call upon the agent to render services adjusting any loss it specified, and to provide that he should, when called upon, render such services as well as all his other services for the fixed commission named in the agreement and without other compensation. The result is that this agent had no more authority than a stranger to adjust this alleged loss of the defendant in error, and his admissions, opinions, and conclusions the day after the burglary was committed were not those of the company, and constituted no evidence against it. His statement on that day that the defendant in error was insured was not competent evidence against the company, because it was not a part of the things done in making the contract, and a statement which is detached from the material act pertinent to the issue, and which constitutes a mere narrative of a past transaction, is nothing but hearsay (Association v. Shryock, 73 Fed. 774, 778, 20 C. C. A. 3, 8, 36 U. S. App. 658, 667; Insurance Co. v. Mosley, 8 Wall. 397, 405, 416, 19 L. Ed. 437; Railroad Co. v. O'Brien, 119 U. S. 99, 104, 7 Sup. Ct. 118, 30 L. Ed. 299; Fordyce v. McCants, 51 Ark. 509, 513, 11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69; Railway Co. v. Becker, 128 Ill. 545, 21 N. E. 524, 15 Am. St. Rep. 144; Railway Co. v. Ivy, 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758; Adams v. Railroad Co., 74 Mo. 553, 41 Am. Rep. 333; Tennis v. Railway Co., 45 Kan. 503, 25 Pac. 876; Railway Co. v. Holland, 82 Ga. 257, 10 S. E. 200, 14 Am. St. Rep. 158); because he had no authority to adjust the alleged loss, and he was not engaged in the discharge of any duty of his agency when he made the statement, so that it was not the act or admission of the company (Railroad Co. v. McLelland, 62 Fed. 116, 10 C. C. A. 300, 27 U. S. App. 71; Clunie v. Lumber Co., 67 Cal. 313, 7 Pac. 708; Walker v. Insurance Co., 51 Iowa, 679, 682, 2 N. W. 583; Worden v. Railway Co., 72 Iowa, 201, 33 N. W. 629); and because the statement was the mere individual opinion or conclusion of Bigley as to the legal effect of certain transactions, and a principal is not bound by the opinions or conclusions of its agents, which it does not empower them to form or express on its behalf

(Insurance Co. v. McMaster, 87 Fed. 63, 69, 30 C. C. A. 532, 538, 57 U. S. App. 638, 648; Insurance Co. v. Henderson, 69 Fed. 762, 764, 768, 16 C. C. A. 390, 391, 393, 395, 32 U. S. App. 536, 540, 543, 547; Laclede Fire Brick Mfg. Co. v. Hartford Steam Boiler Inspection & Insurance Co., 60 Fed. 351, 353, 358, 8 C. C. A. 1, 3, 8, 19 U. S. App. 510, 515, 521; Casualty Co. v. Teter, 136 Ind. 672, 673, 676, 679, 36 N. E. 283; Worden v. Railway Co., 72 Iowa, 201, 33 N. W. 629).

Many other questions are presented by the assignments of error, but it is unnecessary to a decision of this case to discuss or determine them, because the ruling already considered was material, erroneous, and fatal to the verdict. The judgment is accordingly reversed, and the case is remanded to the court below, with directions to grant a new trial.