JOHN P. BOEVER, Appellee, v. GREAT AMERICAN INSURANCE COMPANY, New York, Appellant.

No. 43111.

APRIL 7, 1936.

Roseberry & Pitts, for appellant.

Geo. W. Sturges, for appellee.

MITCHELL, J.—The plaintiff is the owner of a certain farm located in Plymouth county. The defendant is an insurance company engaged in writing policies of insurance covering loss by hail. It is the claim of the plaintiff that the defendant company insured his crop of corn against loss or damage by hail, from the time of the signing of the application for insurance; that at the suggestion of the agent of the insurance company application was forwarded by mail to the office of the company; that on the 2d day of July, 1934, the corn insured was damaged by hail; and that said loss occurred before the insurance company had rejected the application and while said insurance was in force.

The defendant by way of answer expressly denied that any agreement, express or implied, was entered into to insure the

plaintiff's corn against loss or damage from hail previous to the acceptance of the application of insurance and the issuance of a policy. And it expressly denied that any person, party, or agent had any authority whatsoever to enter into any agreement, orally, to insure the plaintiff against any damage or loss. By way of reply, the plaintiff alleges that the defendant's duly authorized agent accepted an application for insurance and orally agreed to insure him against loss by hail from the time of the signing of the same. That it was the custom and usage of the insurance company to date its hail policies, when issued, from the date of the signing of the application, and that the defendant company accepted the application in this manner from its agent. That its agent had implied or apparent authority, if not actual authority, to make the preliminary contract of insurance. That defendant's agent had knowledge of the custom of issuing policies dated the day of the signing of the application, and it is estopped from denying the agent's authority to enter into the oral preliminary contract.

Evidence was offered and judgment was entered against the defendant company in the amount of $292.92, plus interest and costs.

The insurance company, being dissatisfied, has appealed to this court.

There is no dispute as to the facts in this case. One G. E. Eilers was the soliciting agent of the Great American Insurance Company, living at Le Mars, Iowa. Some time about the 1st of June, 1934, Ray Hauser, who was the tenant on the Boever farm, made an application through Eilers to the appellant company for $400 of hail insurance on his corn crop on the appellee's farm. This application was duly made out and forwarded to the company, and rejected. The agent then informed Hauser that if the application was made out in the name of Boever, appellee, the company would accept it. Eilers then prepared the second application in his own handwriting, covering the same premises; in fact, the only difference in the two applications was that the latter was written in the name of John P. Boever. The application was signed and dated at 9 o'clock p. m. 6–27–34. At the same time a promissory note was executed and signed by Boever in the amount of the premium due, the note providing that it was to draw interest in case of default, from the date it was signed, to wit, 6–27–34. At the time the application was signed

the agent of the appellant company advised the parties that the insurance went into effect as soon as the application was signed and sent in, and instructed that it be mailed, together with the note, to the office of the appellant company, which was done. On July 2, 1934, the corn crop was damaged by hail. The insurance company had not at that time or at any other time accepted the application, and there is neither pleading, proof, nor claim that the application was ever accepted by the company. In fact, it was rejected.

The application provided, among other things:

"* * * for indemnity against direct damage or loss by hail only to my interest in growing crops consisting of corn, while growing on the land hereinafter described for the term of five (5) growing seasons, commencing at twelve (12) o'clock noon of the date this application is accepted and policy issued and terminating at twelve (12) o'clock noon September twentieth (20th), 1938."

It also provided:

"That this company shall not be bound by any act or statement made to or by its agents or representatives restricting its rights or waiving its written or printed contract unless inserted in this application."

It is the contention of the appellant that since the application was never accepted by the company and since the agent of the company had no authority to waive any part of the written or printed contract, it is not liable for the damage.

In the case of Nertney v. National Fire Insurance Company, 199 Iowa 1358, at pages 1362, 1363, 203 N. W. 826, 828, it is said:

"Where the policy covers the risk from the date of the application, it is apparent that the insured pays for insurance for the stipulated period beginning with the date of the application, —not the date of its acceptance. No one would be expected to take out insurance for a period of time that had already elapsed. But, unless there is a valid preliminary contract of insurance covering the time between the making of the application and its acceptance or rejection, that is what every insured who receives such a policy is required to do. The injustice of saying that, on

the acceptance of the application, the insured has had protection from the prior date where no loss has occurred, where it is also said that he is not protected if a loss did occur, is plain. But, if the agent had no authority to make a contract for preliminary insurance covering the interim between the making of the application and its acceptance or rejection by the company, there was no insurance covering that time. The company has a right arbitrarily to refuse to accept the application. Of course, where the application is accepted or rejected before a loss, no question can arise as to whether the property was covered. But, where the loss occurs after the date of the application and before its acceptance, may the company question the authority of its agent who made a contract for preliminary insurance covering that period, when, had the application been accepted, the policy issued would have covered it, and the insured would have paid for such protection? * * *

''If the company may pay only at its option for a loss occurring after the making of the application and before its acceptance, notwithstanding the agreement of the agent for preliminary insurance, the insured, manifestly, has no protection during that time; yet, if he procures insurance, he pays for such protection. We are not to be understood as saying that, in the absence of any agreement for preliminary insurance covering the interim between the making of the application and the acceptance or rejection of it by the company, the mere fact that when, or if, the application is accepted, the policy would cover the risk for that time, would create a liability for a loss so occurring, where the application was not accepted. But we are of the opinion that, when it is shown that it is the custom of the company, upon accepting the application, to issue its policy covering the period from the date of the application, its agent taking the application has implied or apparent authority to make a valid preliminary contract of insurance, effective from the making of the application until its acceptance or rejection.''

We must now turn to the record to ascertain whether or not the appellee has come within the rule laid down in the Nertney case. That the agent advised the appellee that the insurance would cover from the time the application was signed, is not denied. The application was signed on June 27, 1934. It was mailed on that evening, under the instruction of the agent of the

appellant company, to its offices. The undisputed evidence shows that it was the custom of the insurance company to attach the application to the policy. The only date on the policy when it was issued was the date of the signing of the application. In the case at bar: June 27, 1934. To prove this, there were introduced in evidence several policies issued by this same company to farmers in Plymouth county, and in all cases the only date upon the policy as to when it was issued, was the date that the application was signed. In addition to this, at the time the application was signed, a note was executed in payment of the premium. This note was dated the same day the application was signed, and it provided that in case of default it would draw interest from that date, to wit: June 27, 1934, which can only be construed as meaning that the premium was to cover the period from the hour the application was signed; otherwise it should not draw interest from the date of the signing of the application, but rather from the date that the policy issued. That this was the custom and usage of this company in the locality in which this application was taken is proved by the fact that there were several other policies introduced in evidence, all of which bore the date that the signature was affixed to the application. In fact, the only date upon the policies when issued was the date that the application was signed. The agent of the company knew that the policies were issued as of the date the application was signed. And so it follows that, the agent having knowledge that the company in issuing policies would issue them so as to cover the risk from the date of the application, the agent has implied or apparent authority to make a valid preliminary contract of insurance, effective from the making of the application. In the Nertney case the application was mailed to the agent of the insurance company, and this court held that the policy became effective upon the mailing of the application by the applicant. In the case at bar the application was mailed to the insurance company and a period of some five days elapsed between the mailing and the time that the loss occurred. So it necessarily follows that in the case at bar, upon this undisputed record, where the agent of the insurance company orally promised that the company would be bound from the date of the signing of the application, the policy being dated the same day that the application was signed, the general custom of the company being to date policies when issued on the same day that the application

was signed, the premium note in case of default drawing interest from the date of the application, it comes under the rule laid down in the Nertney case, and the lower court was right in entering judgment.

No question is here raised in regard to the loss. This is not a fire insurance, but a hail insurance case, and the appellant company does not claim that the appellee had anything to do with it hailing on the night of July 2d.

■■■ But the appellant company says that the application recited that "I am the owner of the land described and I have full interest in the crop grown and to be grown thereon"; that this is a false statement; and that it is admitted the only interest the appellee had in the crop was a landlord's lien for the cash rent due him. The evidence shows that the first application was sent in to the company and was rejected; that it set out the fact that the appellee was the owner of the land, and that Hauser was the tenant. This information the company's agent obtained from the lease between the parties, and was within his knowledge. The company itself, from the former application, had actual knowledge of the ownership of the crop, as well as the agent's knowledge. In face of the fact that both the company and the agent had knowledge, the appellant company is now estopped from saying that it is not liable because of the statements set out in the application.

Some other questions have been raised, all of which have been given due consideration.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

DONEGAN, C. J., and ANDERSON, HAMILTON, KINTZINGER, STIGER, and RICHARDS, JJ., concur.