ELEANOR MUNTZ et al., Administrators, Appellees, v. TRAVELERS MUTUAL CASUALTY COMPANY, Appellant.

No. 45379.

January 21, 1941.

Herrick, Sloan & Langdon, for appellees.

Whitfield & Musgrave, for appellant.

GARFIELD, J.—Eleanor Muntz, as administratrix of the es-

tate of Mary J. Muntz, deceased, commenced action to recover upon an oral contract of accident insurance in the sum of $2,000, which it is claimed one James Morrison, appellant's agent, entered into with Otto S. Muntz, husband of Mary J. Muntz.

On the morning of February 1, 1939, Morrison, a soliciting agent of appellant, visited the office of Otto S. Muntz and obtained his signature to an application for what is known as Auto-Pedestrian Accident Policy. The application recited that "The $5.00 Auto-Pedestrian Policy" paid, for loss of life, $1,000. At the top of the application, in the blank space for the amount of the annual premium, was written $10. At the bottom of the application appear the words, "Policy applied for this 1st day of Feb., 1939. Recommended by Jim Morrison at....... Signature of Applicant, OTTO MUNTZ." No premium was ever paid. On the afternoon of February 1st, Otto S. Muntz was involved in an automobile accident, in which his wife was killed and he received injuries from which he died not later than early the following morning.

After the jury had been examined, impaneled and sworn, and much of the testimony on behalf of the original plaintiff had been introduced, an amendment to the petition was filed substituting for the original plaintiff, Eleanor Muntz, administratrix of the estate of Mary J. Muntz, deceased, Eleanor Muntz, W. D. Caldwell and Vernon Denman, as administrators of the estate of Otto S. Muntz, deceased, who have subsequently prosecuted the case as plaintiffs.

This substitution was apparently necessitated because the form of policy contemplated by the application provided that, in the event of the death of the beneficiary, "Indemnity for loss of life of the Insured is payable to the beneficiary if surviving the Insured, and otherwise to the estate of the Insured." Mary J. Muntz died before her husband, the insured Otto S. Muntz.

I. Appellees base their case upon the decisions of this court in Boever v. Great American Ins. Co., 221 Iowa 566, 266 N. W. 276, and Nertney v. National Fire Ins. Co., 199 Iowa 1358, 203 N. W. 826. The holding in these two cases is that, when it is shown to be the custom of the company, upon accepting the application, to issue its policy covering the period from the date of the application, its agent taking the application has implied or

apparent authority to make a valid preliminary contract of insurance, effective from the making of the application until its acceptance or rejection.

The original plaintiff called the agent, Morrison, as a witness who testified that he was the acting soliciting agent of appellant in February 1939. In answer to the question whether, on February 1, 1939, he knew it was the custom of appellant, upon acceptance of an application for a policy of accident insurance, to date the policy upon its issuance as of the date of the application, Morrison answered, "Well, I believe it was." We think this was sufficient evidence of the custom of appellant to date its policies as of the date of the application to supply the implied or apparent authority of Morrison to make a valid preliminary contract, within the pronouncements in the Boever and Nertney cases. Morrison had no authority to issue policies.

There is no direct evidence whatever of any conversation between Morrison and Otto S. Muntz at the time of the taking of the application. Appellees sought to prove the making of the claimed oral contract of preliminary insurance by the testimony of one Spry and Vernon Denman, the same Denman who, as a co-administrator of Otto S. Muntz, deceased, was substituted as one of the parties plaintiff.

Spry testified that on the morning of February 1st he was in the office of Otto Muntz; that Morrison was there when Spry arrived; that Muntz "had just left"; that Morrison said, "I have just covered Otto with a policy, just like I wrote one for you only double the amount." Spry's testimony as to what Morrison said was received over the objection that it was hearsay and not binding on appellant. Motion to strike was made on the same grounds.

Vernon Denman at about nine o'clock on the morning of February 2d saw Morrison, apparently by chance, on a Des Moines street. Over proper objection, Denman testified: "Mr. Morrison opened the conversation by saying that it was a blessing that he covered Otto Muntz with a policy the day before." It will be recalled that the accident in which Muntz was involved had occurred the preceding day. Morrison knew of the accident, but apparently did not know that Muntz had died until Denman so informed him, although he did know of the death

of Mrs. Muntz. Morrison was in the courtroom during the trial. He was not questioned by appellees as to any conversation between him and Muntz. Appellant made no attempt to show by Morrison that no oral contract for preliminary insurance was made by him, nor that he did not have the conversations testified to by Spry and Denman. The testimony of Spry and Denman is the only testimony in the case tending to prove the oral contract relied upon.

II. At the outset, we are met with appellees' claim that appellant has failed to comply with Rule 30 of this court in its assignments of error. It is strenuously urged that appellant has failed "to point out specifically and in concise language the complaint against the ruling of the court," required by our rule. Much of appellees' argument is devoted to this feature, and they have made a motion to dismiss the appeal on this ground.

It is true the assignments of error are not a model of compliance with our rule. Perhaps we would be justified in not considering some or even all of the errors assigned. At least there has not been a technical compliance with the provisions of the rule. It seems to us, however, that there has been a good-faith attempt, even though not entirely successful, to comply with Rule 30. We have little difficulty in determining appellant's real complaints, especially as to the matters which we deem vital to this appeal. Appellees' brief indicates that opposing counsel were also sufficiently advised as to appellant's complaints. We have therefore concluded to consider the appeal on its merits and to overrule the motion to dismiss.

III. It is first claimed the court erred in admitting the testimony of Spry and Denman above referred to. Appellees seek to justify the admissibility of this testimony on two theories. First, it is argued that Morrison, under the Boever and Nertney cases, had authority to make an oral contract for preliminary insurance and therefore any subsequent statements or admissions by him with reference to this contract were binding upon appellant. Second, it is claimed that in any event the testimony is part of the res gestae.

We are not prepared to hold, as contended by appellees, that an agent authorized to make a contract can legally bind

his principal by admissions or declarations after the transaction has been completed. We do not think this is the law. The authorities do not so hold. On the contrary, the well-recognized general rule, stated in the texts and decisions alike, is that "statements of an agent are not binding as admissions upon his principal unless made within the scope of the authority of the agent, during the continuance of the agency, and *in the discharge of the duties thereof.*" (Italics ours.) 20 Am. Jur. 510, section 599. This is particularly true of subsequent declarations of an agent that he had previously bound his principal by contract.

In Phelps v. James, 86 Iowa 398, 403, 53 N. W. 274, 276, 41 Am. St. Rep. 497, the following statement from Mechem on Agency is quoted with approval:

" 'And the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance, or so soon after as to be in reality a part of the transaction; or, to use the common expression, they must have been a part of the *res gestae*. If, on the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are not admissible. In such a case they amount to no more than a mere narrative of a past transaction, and do not bind the principal. The reason is that while the agent was authorized to act or speak at the time, and within the scope of his authority, he is not authorized at a subsequent time to *narrate what he had done or how he had done it.*' "

Idaho F. Co. v. Fireman's Fund Ins. Co., 8 Utah 41, 45, 29 P. 826, 827, 17 L. R. A. 586, 588, and Vicksburg & M. R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 172, 30 L. Ed. 299, both contain discussions of the law on this subject.

We think there is no doubt but what admissions or declarations of an agent pertaining to a transaction, in order to be binding on the principal, ordinarily must be made in the course of the transaction or so soon thereafter as to be in reality a part thereof.

Taking up first the testimony of Spry in the light of the

foregoing statements of the law, we hold there was no error in admitting this testimony. It is a fair inference that Spry appeared in the office of Muntz soon after the application had been taken; that Muntz had just left the office. Morrison had recently taken an application from Spry for a $1,000 auto-pedestrian policy. Morrison's statement to Spry, "I have just covered Otto with a policy just like I wrote one for you only double the amount", was made so nearly at the time of the transaction between Morrison and Muntz that we regard it as in reality a part thereof. It was a part of the res gestae.

The term "covered" has a well-recognized meaning in matters pertaining to insurance. In Shumway v. Home F. & M. Ins. Co., 301 Mass. 391, 17 N. E. 2d 212, the company's agent told insured during the course of the negotiations, " 'The building is covered.' " The court says, 301 Mass. 391, 395, 17 N. E. 2d 212, 214:

" 'The meaning of those words ordinarily as applied to fire insurance is that the property shall be insured in the standard form of insurance from that instant for a reasonable time until either the policy or policies can be written out or their issuance approved or disapproved by authorized representatives of the insurer, or some other temporary impediment to the complete and formal contract of insurance may be removed. It constitutes insurance for a reasonable time considering all the attendant conditions.' "

We believe the term "covered" has a similar meaning when applied to accident insurance.

In 20 Am. Jur. 573, section 676, it is stated:

"The tendency of recent decisions is to relax the rule as to the declarations of agents and servants not contemporaneous with the transaction, rather than to restrict it."

And at page 557, section 663, of the same volume:

"The marked trend of the decisions is to extend, rather than narrow, the scope of the doctrine admitting declarations as part of the res gestae."

An authority for the admissibility of the testimony of Spry

is Aetna Ins. Co. v. Licking Valley Milling Co., 6 Cir., Ky., 19 F. 2d 177. There plaintiff had applied for insurance to a broker who had no authority to act for the company. In the presence of plaintiff's manager, the broker telephoned an agent of the company. The manager testified ''after the conversation over the 'phone he [the broker] told me the insurance was in effect.'' The court held this testimony as to what the broker told insured following his telephone conversation with the company's agent was properly admitted as res gestae.

To hold that the testimony of Spry was inadmissible would be to take a view which we regard as too narrow and contrary to the current trend of the decisions.

IV. As to the testimony of Denman, although we recognize the tendency to enlarge the res gestae rule, we are inclined to agree with appellant that the trial court erred in receiving this evidence. The conversation between Morrison and Denman which the latter undertook to recite as a witness apparently took place by chance on the streets of Des Moines the day following the taking of the application. Mrs. Muntz had been killed and Otto Muntz had received injuries from which he had died. Morrison's statement, ''It was a blessing that he covered Otto Muntz with a policy the day before,'' was a mere declaration with regard to a past transaction. In making such statement it can scarcely be claimed that Morrison was acting within the scope of his authority, nor was he engaged in the performance of any duty with reference to the Muntz insurance. The statement was not made so near the transaction as to be a part of it.

In Fidelity & Casualty Co. v. Haines, 8 Cir., Mo., 111 F. 337, 339, recovery was sought upon an oral contract to insure against burglary. The following quotation from the opinion of the 8th Circuit Court of Appeals, speaking through Judge Sanborn, indicates the question involved and the holding of the court:

''Two witnesses were permitted to testify that on the following day Bigley [the agent] admitted to them that the defendant in error was insured. * * * If the authority of Bigley to make the contract had been previously proved, the fatal ob-

jections would still remain that the testimony of these witnesses was mere hearsay, the simple narration of what Bigley said the day after making the agreement, and that this was nothing but his individual opinion or conclusion, which he was neither authorized to make, to form, or to express for his company. If any contract to insure was ever made, it was made on June 29th, before the burglary, and while the stock was in the possession of the defendant in error. When Bigley and Haines parted on that day, the agreement upon which this action must stand either was or was not in existence. No story that Bigley subsequently told, no opinion that he afterwards formed or expressed, could either make or destroy, strengthen or weaken, the agreement. When he made this statement that Haines was insured on the day after the burglary, he was not engaged in negotiating this contract. What he said was not a part of things done in closing the agreement. It did not even rise to the dignity of a narrative of a past event. It was nothing but his conclusion or opinion as to the legal effect of the things that had been said and done by the company, Haines, and himself at some time before the burglary.''

In American Life Ins. Co. v. Mahone, 21 Wallace (88 U. S.) 152, 157, 22 L. Ed. 593, 595, it is said:

''The opinion of an agent, based upon past occurrences, is never to be received as an admission of his principals''.

In Cox v. Des Moines Elec. Light Co., 209 Iowa 931, 939, 229 N. W. 244, 247, the court says:

''It is shown that Fred Macy, one of the defendants, an employee of the Light Company, about an hour after the accident, told one of the witnesses 'there was a liability to the case.' Such statement was not part of the *res gestae,* and not shown to have been made with authority. It could in no way be binding upon his employer or upon the other defendant. Moreover, it clearly appears that, if made, it is only the statement of a legal conclusion. The question of liability is a question to be determined by the court.''

The words accredited to Morrison by Denman, while per-

haps not essentially different from the words testified to by Spry, are at least somewhat more of a conclusion. However, the time and circumstances of the two statements are entirely different.

We have carefully considered the authorities cited by appellees in support of the admissibility of Denman's testimony. Perhaps the principal case relied upon is Shumway v. Home F. & M. Ins. Co., 301 Mass. 391, 17 N. E. 2d 212, hereinbefore referred to. In that case, however, plaintiff, the insured, was permitted to testify that defendant's agent told him, before the arrival of the policy and before the loss occurred, "The building is covered." We do not regard this in any way analogous.

It seems to us there is a vital distinction between the testimony of Spry as to the statement made by Morrison so near the time of the principal transaction with Muntz and the statement accredited to Morrison by Denman after the taking of the application, the happening of the accident, and the death of Muntz. The statement of Spry, we believe, was admissible as a part of the res gestae; the testimony of Denman was not.

■ V. At the close of plaintiffs' testimony and again at the close of all the evidence, appellant moved for a directed verdict. The principal ground of the motion was the claimed insufficiency of the evidence to establish the oral contract sued upon. The overruling of the motion is assigned as error. In view of a retrial, we feel called upon to express our opinion on the sufficiency of the evidence to warrant the submission of the case to the jury, without the above testimony of Denman which we hold was inadmissible. It is our conclusion that even without the objectionable testimony of Denman, the record was sufficient to warrant submission to the jury.

Apparently the only persons present at the time Morrison procured the application from Muntz were these two individuals. Muntz was involved in an accident the same day, from which he died early the following morning. The only living person having positive, direct knowledge of all the conversation was appellant's agent, Morrison. Insofar as the record shows, Spry is a disinterested witness. Appellant made no attempt to show by Morrison that he did not say to Spry just what the latter testified. Nor was any attempt made to deny, by testimony of Mor-

rison, the making of the claimed oral agreement. It seems reasonable that appellant would have placed its agent, Morrison, upon the witness stand to deny the oral contract, if no such agreement was made, and deny the testimony of Spry if Spry were not telling the truth. With Muntz dead, appellees were confronted with some difficulty in proving their case. While they were not thereby relieved from producing the necessary proof, it seems to us that the testimony regarding the written application, the custom of the company to date its policies as of the date of the application, the testimony of Spry, and the silence of the agent, Morrison, were sufficient to take this case to the jury on the issue of the making of the oral agreement declared upon.

In this connection it must be remembered, as this court observed in Duncan v. Rhomberg, 212 Iowa 389, 394, 236 N. W. 638, 641, "Statements made as part of the *res gestae* are substantive evidence of the matters stated."

■ VI. Even if it were not for our holding that Denman's testimony was inadmissible, there is one other matter that would require a reversal and which we will mention, although it will not arise upon a retrial. As previously stated, the action was originally brought by Eleanor Muntz as administratrix of Mary J. Muntz, deceased, and, during the course of the trial, a substitution of parties plaintiff was permitted. Accordingly, the three co-administrators of the estate of Otto S. Muntz became the plaintiffs. The trial court did not abuse its discretion in permitting this substitution of parties. A case very closely in point on this question is Webster Co. Buick Co. v. Nebraska Auto. Co., 216 Iowa 485, 249 N. W. 203, where the trial court permitted a substitution of parties plaintiff after the jury had been obtained and testimony had been introduced. See also, as having some bearing, Jensen v. Railway Co., 198 Iowa 1267, 201 N. W. 34, and earlier Iowa cases cited on page 1269 of 198 Iowa, page 35 of 201 N. W.

By the substitution, Denman, one of the co-administrators of Otto S. Muntz, became a party plaintiff. As we understand the record, Denman had testified to the conversation with Morrison and the taking of his testimony had been concluded before this substitution was made. Counsel for appellant vigorously objected to the substitution, principally upon two grounds.

First, he was not permitted to examine prospective jurors with reference to acquaintance, etc., with Denman, who apparently was fairly well known. Second, appellant was not permitted to cross-examine Denman as a party to the case, thereby showing his interest in the litigation. Pursuant to the suggestion of appellees' counsel, the jury was at no time advised that Denman had been substituted, in his capacity as co-administrator, as one of the plaintiffs. The trial court stated to the jury that "Eleanor Muntz, and others, administrators of the estate of Otto S. Muntz," had been substituted as plaintiffs. In the instructions of the court, the plaintiffs were referred to as "Eleanor Muntz, et al, administrators of the estate of Otto S. Muntz, deceased."

Doubtless, the thought of the court was that if the jury did not know Vernon Denman was one of the plaintiffs, any prejudice to appellant by not questioning the prospective jurors on voir dire as to their relations with Denman would be removed. Counsel for appellant strenuously contended that the court should advise the jury that Denman as co-administrator was one of the plaintiffs. An instruction was requested in proper time and refused to the effect that the jury in passing upon the weight of the testimony of Denman might consider that he was a party plaintiff in his representative capacity.

We believe the trial court committed prejudicial error in concealing from the jury the fact that Denman, a vital witness for appellees, was a party plaintiff. It is true he was a party in his representative rather than individual capacity. Yet this was clearly sufficient, in our opinion, to make him interested in the outcome of the case. The jury was entitled to weigh his testimony in the light of the fact that he was one of the plaintiffs. It is of course elementary that in weighing the testimony of witnesses, the jury is entitled to consider the interest of the witness in the outcome of the trial. Indeed, it is common to instruct juries that parties to the case are interested in the outcome and their testimony should be viewed as that of interested witnesses. In the case before us, the trial court instructed the jury that in passing on the credibility of the witnesses, it was proper to consider, among other matters, their interest or lack of interest in the result of the trial. The jury was unable to weigh the testimony of Denman in the light of his being an

interested witness because they did not know, so far as the record shows, that he was a party to the case. There is little doubt but what a recovery in the case would entitle Denman to larger compensation as an administrator than if no recovery were had. Aside from the question of financial interest in the outcome, his being a party, even in a representative capacity, could scarcely fail to affect his interest in the outcome of the litigation.

The appeal raises other questions but they are incidental. We regard the foregoing as determinative of the case.

For the error of the court in receiving the testimony of Denman, and for the failure of the court to advise the jury by instruction or otherwise that Denman as co-administrator was a party plaintiff, the case is reversed.—Reversed.

HALE, C. J., and MITCHELL, STIGER, BLISS, OLIVER, and WENNERSTRUM, JJ., concur.

MILLER and SAGER, JJ., concur in a reversal, but dissent in part as follows:

MILLER, J. (dissenting)—I am unable to agree with the foregoing opinion and respectfully dissent.

The statement, which is attributed to the agent, Morrison, by the witness Spry, is stated as follows: "I have just covered Otto with a policy, just like I wrote one for you only double the amount." The statement, attributed to Morrison by the witness Denman, is stated as follows: "Mr. Morrison opened the conversation by saying that it was a blessing that he covered Otto Muntz with a policy the day before." The opinion holds that the testimony of Spry is competent as a part of the res gestae, but that the testimony of Denman is incompetent because the statement was not a part of the res gestae but a mere narration of a past transaction.

The opinion cites the case of Fidelity & Cas. Co. v. Haines, 8 Cir., Mo., 111 F. 337, 339, wherein the court states: "It was nothing but his conclusion or opinion as to the legal effect of the things that had been said and done by the company, Haines, and himself at some time before the burglary." There is also cited American Life Ins. Co. v. Mahone, 21 Wallace (88 U. S.) 152, 157, 22 L. Ed. 593, 595, wherein it is stated: ".The opinion of an

agent, based upon past occurrences, is never to be received as an admission of his principals". There is also cited the case of Cox v. Des Moines Elec. Light Co., 209 Iowa 931, 939, 229 N. W. 244, 247, wherein a statement was held to be incompetent because, "Moreover, it clearly appears that, if made, it is only the statement of a legal conclusion."

I think that the statement Denman attributed to Morrison was incompetent because the expression, "that he covered Otto Muntz with a policy", was a legal conclusion. It seems to me that by the same token Spry's testimony that Morrison said, "I have just covered Otto with a policy", is subject to the same objection that it is merely a legal conclusion and not a statement of fact.

The question to be determined was whether or not Morrison had covered Muntz with a policy before the fatal injury. I would hold that the statements attributed to Morrison by both Spry and Denman are incompetent. If both are excluded, then there is insufficient evidence to support a verdict for plaintiff. While I agree that the case should be reversed, I do not agree with the statement that upon a retrial the testimony of Spry together with the testimony as to the custom of the company would be sufficient to take the case to the jury.

SAGER, J., concurs in the foregoing.