GREENWICH INS. CO. v. WATERMAN et al.

(Circuit Court of Appeals, Sixth Circuit. March 30, 1893.)

No. 68.

1. MARINE INSURANCE—AUTHORITY OF AGENT—LOCAL USAGE.

A well-defined local usage, whereby marine insurance agents can make binding contracts to take effect on the day of application, without consulting their superiors, is presumably known to a foreign company engaged for years in insurance business at the place where the usage obtains, and is sufficient to prevail over the private instructions of such agents when the insured is in ignorance thereof, and is without notice of facts sufficient to put him upon inquiry. Hammond, J., dissenting.

2. SAME.

The fact that a local agent has no power to issue policies does not necessarily show that he is without authority to make binding preliminary contracts of insurance.

3. SAME—EVIDENCE.

Although the existence of a usage may be established by the uncontradicted testimony of one witness when he is explicit as to its duration, certainty, and notoriety, the testimony of an insurance broker as to the authority of agents in a certain locality to make binding preliminary contracts, which is based wholly on the practice of his own office, is not sufficient to go to the jury.

4. SAME.

The fact that a marine insurance agent acts for his company in the adjustment of losses, that he does bind the company as to cargoes, takes charge of wrecking expeditions, receives proofs of loss and notices of abandonment, does not warrant an inference that he has authority to bind the company as to vessels, by a person knowing that the agent has no authority to issue hull policies, and that application therefor must be forwarded by the agent to the general office for approval.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

At Law. Action on a contract of insurance in the circuit court for Wayne county, Mich., by Cameron D. Waterman and Joshua W. Waterman against the Greenwich Insurance Company. Defendant removed the cause to the circuit court of the United States, where verdict and judgment were given for plaintiffs. Defendant brings error. Reversed.

Statement by TAFT, Circuit Judge:

This was a writ of error to a judgment of the circuit court for the eastern district of Michigan in favor of Cameron D. Waterman and Joshua W. Waterman against the Greenwich Insurance Company for $5,475. The action was on an agreement by defendant to insure plaintiffs against loss or damage by fire to an amount not exceeding $5,000 on the steamer Chenango, in consideration of a premium of $50, to be paid by plaintiffs when requested, the risk to attach from the 10th of April, 1890, at noon. On the 11th of April, 1890, the steamer Chenango caught fire, burned, and became a total loss, whereby, as plaintiffs claimed, the defendant became liable for the full amount of the insurance.

The defendant pleaded the general issue, and the case was heard before a jury. On the trial the plaintiffs introduced evidence to show that a verbal contract of insurance was made between their agent, Ralph, and Dickinson, the agent of the insurance company, the risk to attach from the 10th of April, the day of making the contract. The evidence of the defendant tended to show that Ralph had applied for insurance to date not from the 10th of April, but from the 20th of that month; that Dickinson had no authority to make a bind-

ing contract of insurance for the company, and had forwarded an application, written out by himself, fixing the date for the risk to attach on the 20th of April, and that a policy had issued in accordance with this application. The issues on the trial were—First, as to the agreement between Ralph and Dickinson; and, second, as to Dickinson's authority in representing the company. On both these issues, the jury found for the plaintiffs.

Dickinson was a clerk for Eber Ward, and was the general manager of his insurance business, and it was not denied by defendant that he had the same authority that Ward had to represent the company. Ward was a local agent of the Greenwich Insurance Company at Detroit, and did a general hull and cargo marine insurance business. He had no written commission. The limits of his authority were fixed by the course of business between him and the general agent of the company, Flint, at Buffalo. He never issued policies of insurance on vessels. He was furnished with certificates of insurance with which to insure cargoes. His course of business in insuring vessels was to receive a verbal application from the vessel owner or his agent, and then himself fill out a written application, and forward it to the general agent at Buffalo, receiving in return the policy filled out in accordance with the application. Ralph, the plaintiff's agent, knew that Ward had no authority to issue policies on vessels, or what are called "hull policies." It was undisputed that no local agents at Detroit of foreign insurance companies had authority to issue hull policies, and that the usual course of business was like that just described in Ward's case. When a policy was sent to Ward in response to an application, he would deliver it, with a premium note, to the insured. The premium note would be sent to the general agent, and returned to Ward for collection, when due. Proofs of loss under marine policies had been served on Ward without objection by the company, and so, too, had notices of abandonment. He was the agent of the company named by its secretary to receive service of process in Michigan, as required under the Michigan law. He testified that it was the distinct understanding between him and the predecessor of Flint in the general agency at Buffalo that he should have no power to make a binding contract of insurance for the company on vessels. It was the custom of vessel owners at the lake ports to delay taking out their insurance until their vessels were ready to sail on their first trips, in order to get the benefit of a reduction in rates, which not infrequently took place about that time. It was contended on behalf of the plaintiffs below that, because of this condition in the insurance business, a well-defined usage had become established by which the local agents of foreign companies were understood to have authority to bind their companies by preliminary contracts of insurance from the date of the application, when the applicant desired the risk to attach from that day.

The evidence chiefly relied on to prove the usage was that of Ralph, the agent of the plaintiffs. Another witness, Adams, also testified on the subject, but Ralph's evidence was much fuller, and less confused. Ralph's examination upon the subject was as follows: Questions by counsel for plaintiff: "Question. Is there any well-known usage among insurance men and owners of vessels on the lake ports as to when a risk for which a verbal application is made to be covered by a policy, afterwards to be issued, takes effect or attaches? Answer. Yes, sir; there is a very well-defined usage in regard to that. Q. And under that usage, or in pursuance of that usage, when does a risk of that character attach? A. At once, on the application being made to the agent, or we would not have any safety in doing business. Cross-examination: Q. I suppose you mean by that, Mr. Ralph, that it depends upon the agreement made, does it not? For instance, if you ask to have a policy attached on the 20th of April, and made the application on the 1st, it would not attach on the 1st of April. There is no usage of that kind, is there? A. No, sir; it would not attach on the 1st. Q. That all there is about the usage is that it is a matter of arrangement at the time the application is made, is it not? A. Yes, sir. If you want both to attach at once, we would consider it attached, if we made the application to the agent. Q. If the agreement is made? A. If I wanted insurance to-day, I would go to the agent and tell him and make my application, and I should consider under the usage— Q. Is

there anything more to that usage than the fact, where you apply to the agent, that some time afterwards a policy is returned, which takes effect in accordance with your application? A. Yes, sir. Q. That is all there is to it? A. Yes, sir; about. Q. And, so far as you know, no question has ever arisen in reference to it? It would not naturally arise unless there was a loss? A. Yes, sir. Q. So that the question as to whether the authority of the agents differ has never been involved in any of the cases that you refer to, so far as you know, has it? A. No, sir. Q. You have no doubt that there is a difference in the authority of agents, have you; for instance, that some have the power to accept risks themselves, without communicating with the company, while others do not? You know that from your business experience, do you not? A. Well, I consider when a man takes a risk, that binds the company. Q. Don't you know that there are conditions as between agencies that some agents are authorized expressly to bind the company, while others are not? A. I haven't had experience in other office but my own; that is, writing anybody else's policies. Q. You don't know anything about any other agencies? A. I don't know what their agreement is especially. Q. Or what their authority is? A. I know they are agents of the company. Q. You know they take applications? A. Yes, sir. Q. And upon applications taken by them the company subsequently, as a rule, writes policies in accordance with the application? A. Some are written in the local offices. Q. Do you know of any marine insurance company in Detroit that writes policies? A. Yes, sir. Q. Who? A. The Detroit Fire & Marine, and Michigan. Q. Do you know of any foreign insurance company that writes policies here in its office in Detroit? A. What do you mean,—hull policies, or marine policies? Q. Hull policies. A. No; I don't know of an agent that writes hull policies here. Q. So far as you know, it is the invariable rule for the application to go to the local agent for delivery? A. Yes, sir; for hull policies. Q. It is the invariable rule for the application to go to the general agent of the company through the local agent, —for the general agent of the company, upon that application, to write the policy and send it to the local agent for delivery? A. On hulls themselves, I think that is perhaps so. Q. So far as you know, that is the invariable rule? A. So far as it applies to Detroit."

Dickinson, Thurber & Stevenson, for plaintiff in error.

F. H. Canfield, (Levi T. Griffin, of counsel,) for defendants in error.

Before JACKSON and TAFT, Circuit Judges, and HAMMOND, District Judge.

TAFT, Circuit Judge, (after stating the facts.) By their verdict the jury found that Ralph and Dickinson stipulated that the risk should attach from the 10th of April. The finding was based on sufficient evidence after a fair submission of the issue to the jury, and cannot be reviewed in this court.

The main controversy here is on the question of Ward's authority to bind the company by a preliminary and verbal contract of insurance. The court below, in effect, charged the jury that, if there was a well-defined usage by which local agents of foreign insurance companies could make binding contracts on applications for insurance to attach the same day, Ward could bind the company accordingly, whatever his private instructions.

We are of opinion that the charge of the court on this point as a proposition of law was sound.

If such a definite usage in respect to local agents of foreign insurance companies had been proven, the Greenwich Insurance Company would have been charged with notice of it, and by establishing

Ward as its local agent the company would have given him apparent authority to bind it in accordance with that usage, if reasonable. Goodenow v. Tyler, 7 Mass. 31; Fisher v. Sargent, 10 Cush. 250; Graves v. Legg, 2 Hurl. & N. 210; Mechem, Ag. § 281.

The evidence discloses that the Greenwich Insurance Company had been doing a marine insurance business in Detroit for 10 years at least, and it could be fairly presumed that the company was familiar with any local usage obtaining there in the insurance business.

If, as testified by several witnesses, millions of dollars of insurance were placed on the day of sailing, it would be extraordinary if vessel owners would consent to an arrangement by which no insurance should be binding on their vessels until time enough had elapsed after the day of sailing for their applications to be forwarded to the general agents of the insurance companies at distant points, and by them approved, with the arbitrary right thus secured to the insurance companies, in case of a loss meantime, to reject the application. A usage by which local agents could make binding preliminary contracts for the company would seem to us, therefore, to be reasonable.

It does not necessarily show that a local agent has no authority to make preliminary binding contracts of insurance that he is without power to issue policies. 1 Wood, Ins. 25; Hardwick v. Insurance Co., 20 Or. 547, 26 Pac. Rep. 840. But it would seem that a known want of authority to issue policies of insurance would put the applicant for insurance on inquiry as to whether the agent had authority to bind the company by a preliminary contract. The necessity for binding contracts from the date of the application, in view of the condition of the insurance business at Detroit, is quite apparent, and it is probably said with truth that no foreign insurance company could do business there unless it made some arrangement to effect binding insurance from the date of the application. This suggestion is met on behalf of the insurance company by evidence that, in case where application was made to its local agents for insurance to attach on the day of the application, they were instructed to telegraph the applications to the general agent at Buffalo, and receive by wire authority from him to accept the risk on behalf of the company. This course of business between the Greenwich Insurance Company and its local agents would not, of course, exempt that company from the operation of a local usage enabling agents to make binding contracts, unless the person dealing with this agent had knowledge of his authority.

The difficulty we have in supporting the judgment below is not in the theory of the court's charge on this branch of the case, but in the insufficiency of the evidence to show the local usage relied on by the plaintiffs. It is well settled that a usage or custom, to affect the construction of contracts, or to extend the apparent authority of agents beyond their actual authority, must be uniform, notorious, and well defined. Black v. Ashley, 80 Mich. 99, 44 N. W. Rep. 1120; Reynolds v. Insurance Co., 36 Mich. 131; Schurr v. Savigny, 85 Mich. 149, 48 N. W. Rep. 547; Stringfield v. Vivian, 33

Mich. 681; Lamb v. Henderson, 63 Mich. 302, 29 N. W. Rep. 732; Bowling v. Harrison, 6 How. 248; U. S. v. Buchanan, 8 How. 83.

The evidence of usage shown in the record is not at all satisfactory, and does not fulfill the requirements above named. In answer to a leading question, Ralph does say that there was a well-defined usage in Detroit that applications for insurance to take effect at once, if accepted by local agents, bound the company; but his cross-examination clearly discloses that his evidence is based rather on his opinion of what the local agent's authority ought to be than the knowledge that the existence of such authority was recognized, notoriously and uniformly, in Detroit. He virtually admits that his knowledge of agents' authority is largely confined to his own office. His opinion of the usage is based on the fact that when an application is filed for insurance to date from the day of the application, a policy is subsequently returned to the applicant dated accordingly. It has been held that such action by the company is not a recognition of the right of the local agent to bind the company by a preliminary contract, unless it has been brought home to the company that before issuing the policy the agent has attempted so to do. Morse v. Insurance Co., 21 Minn. 407. Without expressing an opinion upon the correctness of this view, it is sufficient to say that in the case at bar the evidence that the local agent telegraphed applications for immediate insurance completely removes the ground for contending that the Greenwich Company, by dating its policy back to the date of the application and evidencing a contract from that time, recognized the power of its local agent to make it. It is entirely consistent with all of Ralph's testimony that all local agents in Detroit telegraph for authority to accept risks to attach at once. We do not mean to say that even such a course of business, if not known to the public, would exempt companies pursuing it from the effect of local usage upon the apparent authority of their agents, if the usage were proven. Nor do we deny that a usage may be established by the uncontradicted evidence of one witness when he is explicit as to its duration, certainty, and notoriety, (Robinson v. U. S., 13 Wall. 363;) but we do not find any such explicit statements in Ralph's evidence. Adams' testimony as to the usage is even less decided. Whether a usage exists is for the jury on conflicting evidence; but, before the jury can be allowed to consider the question, there must be some evidence tending to establish a well-defined usage, uniform and notorious. There was no evidence of this kind in this case. The question of usage should not have been submitted to the jury. The court erred in so doing, and error has been properly assigned, on exception duly taken. The error was prejudicial. Without the proof of the usage claimed, there was no evidence that Ward had actual or apparent authority to make the contract sued on.

It is clear that he had no actual authority to make binding contracts of insurance on vessels. From the circumstances that he received premiums, that he acted for the company in the adjustment of losses, that he did bind the company as to cargoes, that he may have taken

charge of wrecking expeditions, that he received proofs of loss for the company, and that he received notices of abandonment without objection by the company, Ralph had no right to infer that he had authority to bind the company as to vessels when Ralph knew that he had no authority to issue hull policies, but that such policies were issued by the general agent of the company on an application forwarded by him.

The argument is pressed upon us that, even if Ward had no authority to bind the company to hull insurance, he had authority to agree upon applications to be submitted for acceptance by the general agent, and that the general agent, by accepting the application he actually submitted for acceptance, in fact accepted the application he ought to have submitted. This, it seems to us, is a non sequitur. The minds required in this case to meet in order that a contract should be made were those of the applicant and the general agent. If the proposition of the former was never submitted to the latter, how could their minds have met? Whether, when an insurance company holds an agent out as the proper person to receive and forward applications, and an application which would have been accepted is negligently altered by the agent of the company, so that, when accepted, it does not cover a loss which would have been covered had the application been properly forwarded, the insurance company can be held liable for the injury thus occurring through the negligence of its agent, is a question not presented on the record before us, because the declaration in the court below was on a contract to insure. A similar question is suggested by Senator Colden in the case of Perkins v. Insurance Co., 4 Cow. 645, 664, and is answered in the affirmative. We express no opinion on the point.

Numerous errors—64 in all—were assigned. Many of them were based on rulings wholly within the discretion of the court, and others were frivolous, because plainly without prejudice. It has been necessary for us to consider but one of them in the view we have taken of the case, but we allude to their number and character to deprecate a practice which so largely and uselessly increases both the costs and the labors of the court.

The judgment of the court below will be reversed, with instructions to order a new trial, the costs of the error proceedings to abide the event of a new trial.

HAMMOND, J. I concur in this reversal, but am not quite willing to assent to what seems to me a too broad proposition as to the force of local usage or custom. The opinion of this court and the charge below, in my judgment, overlook the essential element of acquiescence in the custom, express or implied. A local usage may, and often does, bind a party to a contract against his will; but this is not because he cannot free himself of the custom, but because he has not done so in the given case. Custom has not the force of a statute or other established law in the sense that it requires an act of legislation to rid one's self of it. The insurance company may, if it chooses, refuse to do business according to the custom, and act outside of it; nor is it necessary that it shall bring home a knowl-

edge to every customer that it is doing this in every instance. It will be presumed that it is doing business according to the usage, until the contrary appears, undoubtedly; and even where it has established its own course of dealing, contrary to the general usage, it may, in particular instances, by acquiescence or the peculiar circumstances, bind itself according to the custom, or, rather, be held to have done so; but this is not the broad proposition of the opinion of the court "that, if there was a well-defined usage, by which local agents of foreign insurance companies could make binding contracts on application for insurance to attach the same day, Ward could bind the company accordingly, whatever his private instructions."

This seems to me a denial to the company of the indisputable right to make contracts according to its will, contrary to the usage. If the company's instructions were "private" in the sense that they were concealed, except when displayed as occasion might require to avoid a risk, while otherwise the usage was followed, the usage would prevail unless the instructions had been brought home to the applicant; but this would be because of the concealment, or because, we should rather say, of the fact that the company had acquiesced in the usage instead of discarding it, as it had proposed or pretended to do. The company cannot take the benefits of the usage, and yet spring its instructions, either public or private, when they serve to avoid the particular risk. But if in good faith and in fact it does business in its own way, contrary to the usage, it is the business of the applicant, in that case as in others, to inform himself of the authority of the agent, and he cannot rely on the general usage if the company had not conformed to it, but set up against it, albeit he may have been ignorant of the fact that the company had so discarded the usage. It all depends upon the conduct of the company and its agents, and the question of fact is whether it has substantially followed the custom, or has substantially established a different course of dealing and business habit of its own. This particular applicant may show that it has followed the custom, more or less, and the company may show that it has not. If, in the especial relation of its habit to him, the circumstances fairly show that the company has acquiesced in the custom, it will be bound by it; but if the circumstances show that the company has a special custom of its own, and in dealing with this applicant has done nothing to bind it to the general custom of other companies, or to mislead him to his injury, the operation of the general custom cannot force upon it a contract it did not make, or which was in violation of its instructions to its agent. If, unfortunately, the applicant assumes that this particular company is doing business according to the general custom, when it is not in fact doing so, the misfortune is his, and not the company's.

If the opinion of the court is to be construed, as I fear it may be, to go further than I have indicated as a correct view of the law, I cannot assent to it. On the new trial which we have directed I think the jury should be instructed to decide whether the insurance company acquiesced in the custom, or did business in another way; and, if the latter, whether, notwithstanding that fact, it dealt with

the plaintiff below so as to mislead him into the belief that it was taking his risk under the general custom, and contrary to its own habit of doing business. If he was not so misled, he cannot have the benefit of an insurance which he unfortunately assumed that he had provided upon the notion that all companies were following the ordinary usage, while the fact was this company was not.