C. SLATER, Appellee, v. CAPITAL INSURANCE COMPANY, Appellant.

1. Fire Insurance: PROOFS OF LOSS: WAIVER: AUTHORITY OF AGENT. Where an agent, specially employed by an insurance company to adjust one of two losses, resulting from the same fire, but under policies upon different property, having adjusted the loss with reference to which he was employed, made an agreement with the owner of the property that proofs of loss under the other policy need not be made, and that the claim should abide the result of an arbitration agreed upon with other companies having policies upon the same property, held, that, in the absence of knowledge by the insured of the limitation upon the agent's authority, the insurance company was bound by the agent's agreement waiving proofs of loss.

2. ———: ———: ———: INSTRUCTIONS TO JURY. An instruction in such case that, the authority given the agent to settle one of said losses might be considered by the jury as a circumstance to show the relation existing between the insurance company and said agent, and in determining whether said agent was authorized to adjust and settle the other loss sustained by the plaintiff, was not erroneous.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY, JANUARY 18, 1894.

ACTION on a policy of fire insurance. There was a judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*Read & Read*, for appellant.

*L. L. De Lano*, for appellee.

GRANGER, C. J.—The plaintiff was the owner of a livery barn at Atlantic, Iowa, on which the policy in suit issued, which is numbered 2241. The policy issued to the plaintiff. The defendant also issued a policy on the contents of the barn to Slater & Eller, the Slater of the firm being the same person as the plaintiff. The Western Home Insurance Company also issued separate policies on the same property to the same persons. Other companies also issued policies in the same way. On the third day of May, 1888, and while the policies were in force, the building and contents were destroyed by fire. The policy issued to Slater & Eller by the defendant was numbered 2239. Notice of loss was given to the company under the two policies. Under the policy in suit, numbered 2241, no proofs of loss were made, and the defense to the suit is based on that fact, so far as concerns this appeal. In avoidance of the failure to make such proofs the plaintiff pleaded a waiver by the defendant.

One E. F. Philbrook was the adjusting agent for the Western Home Insurance Company, and visited Slater & Eller for the purpose of adjusting the loss of that company. On his way he called at the office of the defendant company at Des Moines, and was by its secretary, H. E. Teachout, asked to act for the defendant company with reference to its loss; but there is some conflict as to the extent of his authority to so act. It is the claim of the plaintiff that, under his authority, he could legally bind the defendant as to adjustment under both policies, while it is that of the defendant that he was merely authorized to "adjust or take proofs of loss," under policy 2239. At the close of the plaintiff's direct testimony, and again at the close of the testimony in the case, the defendant moved the court to instruct for a verdict in its favor on the ground that

there was no testimony from which the jury could properly find that Philbrook had authority to act for the defendant with reference to the loss under the policy in suit. In each case the motion was overruled, of which rulings complaint is here made, and the consideration of the questions thus presented will largely dispose of the questions in the case. It will only be necessary to consider the ruling upon the second motion, because if, in the further progress of the trial, after ruling upon the first motion, the state of the evidence was so changed that such a motion was properly overruled, the first ruling, even if erroneous, was without prejudice.

I. Under the authority granted to Philbrook by the defendant's secretary, he so acted that the loss of Slater & Eller was adjusted and paid. His own report to the defendant shows that he not only took proofs of loss, but that he also exercised the authority of adjusting values by agreement, and the company acted upon his report. This fact, with the statement in argument by appellant that he was authorized to "adjust or take proofs of loss," warrants the conclusion by us that he was before Slater & Eller as the company's authorized adjuster.

1. FIRE insurance: proofs of loss: waiver: authority of agent.

With this relationship fixed, we can more easily apply the evidence as to Philbrook's authority to bind the defendant as to the loss under the policy in suit. It will be remembered that other companies than the defendant and the Western Home Company, for which Philbrook acted under the Slater & Eller loss, carried risks on the livery barn; and these other companies and Slater, at the time of this adjustment by Philbrook of the Slater & Eller loss, had agreed upon terms of arbitration, and there were at that time no adjustments under the policy in suit. The facts upon which the plaintiff relies to support his plea of waiver are that,

at the time of the adjustment of the Slater & Eller loss, he and Philbrook agreed that no proofs of loss under the policy in suit need be made, and that the claim should abide the result of the arbitration with the other companies, the defendant to pay its proportion of the loss as thus ascertained; and that, relying upon such agreement, no proofs of loss were made; and this suit is for the proportion as fixed by the arbitration. The evidence is conflicting, but the state of it is such that the jury could, as it must, have found that such an agreement was made, and with its finding we should not interfere if, in making such agreement, he could legally bind the defendant.

What, then, as between the plaintiff and the defendant, is the legal effect of the authority granted to Philbrook? The company had sent him to Slater & Eller as their adjuster. Neither the company nor Philbrook intimated that his authority as an adjuster was limited, but, on the contrary, he in the one case authoritatively exercised the usual powers of such an agent. The company had said to both Slater and Eller: "This is my authorized agent. Deal with him as such." In view of the finding of the jury, we may say that Philbrook assumed the same authority for adjustment under one policy as under another. The rule of the appellant's contention would require us to hold that Slater, after dealing with him as an authorized adjuster with him and Eller in regard to the loss on the contents of the barn on one policy, could not recognize him as an adjuster on a loss on another policy from the same company to him, resulting from the same fire. We think that such a rule should not obtain. Looking to the manner in which the insurance business of the country is transacted, through agents, distant from the home offices of the companies, by which patrons neither see nor know any other than the soliciting agent, who, upon a written application, either issues or procures and deliv-

ers the policy, and, after loss, the adjuster, through whom the business of adjustment is carried on, and the consequences of the rule contended for will be apparent. The rules of law are designed to be in harmony with the natural and reasonable conduct of parties in their business intercourse, and with the changed condition in the business intercourse of the country from time to time must come such changes in the laws governing legal rights as will maintain such harmony. Philbrook had been sent to Slater as an adjuster. It is the law that Slater must, at his peril, know of Philbrook's authority to act as such; but with his knowledge that he was an adjuster came the legal right to assume that his power was commensurate with the duties of adjustment between the persons to whom he was sent and the company, as to all matters that should reasonably be considered as intended by the company. We think that, after the adjustment of the Slater & Eller loss by Philbrook, no reasonable person would have doubted his pretended authority to adjust the loss on the barn, particularly in view of the close identity of the losses as to parties and circumstances. It was the act of the company that gave rise to this reasonable belief on the part of Slater by sending Philbrook as adjuster. If an insurance company does not wish to be bound up by so broad a presumption as to the authority of an adjuster, a reasonable and very just rule, as applied to the present method of insurance business, would require that it should impart to the assured the limitations upon his authority, by which means the parties could act upon an equality, a condition absolutely forbidden by the rule contended for.

The general importance of the rule we are considering will justify a somewhat extended quotation from *Insurance Co. v. Wilkinson*, in 13 Wall. 222, where the United States supreme court has adopted reasoning somewhat similar to ours, with like conclusions. We

quote therefrom as follows:   "It is well known," said the court, "(so well that no court would be justified in shutting its eyes to it), that insurance companies organized under the law of one state, and having in that state their principal business office, send these agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agents represent.   They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hand to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company in all that is said or done in making the contract.   Has he no right to so regard him?   It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this, and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy; the argument being that, as to all other acts of the agent, he is the agent of the assured.   The proposition is not without support in some of the earlier decisions on the subject; and at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon.   But to apply such a doctrine, in its full force, to a system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the

insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. The tendency of the modern decisions in this country is steadily in the opposite direction. The powers of the agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

The arguments in that case apply with strong, if not with equal, force to the business of fire insurance, and to the duties and authority of agents acting for companies after losses occur. In view of the business zeal and competition of the times, with insurance companies we may say "no stone is left unturned" to secure applications, and to this end agents wait upon desired customers in field and shop and home, to urge their superior claims for patronage. After a loss occurs, agents are promptly on the ground for investigation, conference, and adjustment. Under the business education of the times they are factors by and through which patrons may know and deal with the companies. The agent is the representative of the company. Now, it is certainly a reasonable rule that when an agent approaches a patron who has met with a loss, he may know to what extent he can safely act or deal with him as such agent. The company has that knowledge. If they are to do business upon equal terms, the patron should also have it. It is hardly to be expected that the business of adjustment must await a correspondence between the assured and the company to know the fact. But two other methods are open: *First,* that the company shall give notice of the authority possessed by its agent; or, *second,* that the assured may lawfully as-

sume that the agent has authority to transact the business in hand as if possessing general powers for that purpose. Such a rule has full support in *Insurance Co. v. Wilkinson, supra,* and also in considerations of both public and private good. See, also, as bearing on this question, *Silverberg v. Insurance Co.* 7 Pac. Rep. (Cal.), 38, and, to some extent *Insurance Co. v. Gallatin,* 3 N. W. Rep., (Wis.) ,772. There are very many cases in which other, but somewhat kindred, subjects are discussed, wherein, from the reasoning, this position receives support. Of those, see *Morrison v. Insurance Co.,* 6 S. W. Rep. (Tex. Sup.) 605; *Cleaver v. Insurance Co.,* 39 N. W. Rep. (Mich.), 571; *Schoener v. Insurance Co.,* 7 N. W. Rep. (Wis.), 544; *Alexander v. Insurance Co.,* 30 N. W. Rep. (Wis.) 727, and cases therein cited. It should be stated that the state of Wisconsin has a general statute on the subject, which controls the decisions of that state to some extent. We think the facts of this case justify the application of such a rule, and that the company is responsible for failure to make the proofs of loss. The evidence and admissions were such that, under the law as we have expressed it, it was not error to refuse the motion to instruct the jury to return a verdict for the defendant.

II.  There is a complaint that the court admitted evidence as to the Slater & Eller loss and adjustment, 2. ——: ——: ——: and it will be seen that we think such
instructions to
jury.  testimony was proper, as showing the connection of the two losses, and the relation of the parties to this suit in the two transactions.

The court told the jury that "authority from the defendant to Philbrook to adjust and settle the Slater & Eller loss would not give authority to bind the defendant as to the loss of the plaintiff under the policy in question," and of this the appellant does not complain; but the court further says: "Still the fact that

authority was given him to settle the Slater & Eller loss is proper to be considered by you as a circumstance to show the relation existing at the time between defendant and said Philbrook, and from these and every other fact and circumstance shown by the evidence you must say whether said Philbrook was authorized to adjust and settle plaintiff's loss or not." We see no error in the instruction. The two statements are not in conflict. The first deals with the legal effect, only, of a particular fact, and the latter permits its use with other facts to reach a conclusion. It may be said that the theory on which the court submitted the case differs from the rule announced by us in this: that it required the jury to find as a fact that Teachout authorized Philbrook to act for the company in adjusting the Slater loss, without stating the presumption arising from the fact of his being sent to Slater as the company's adjuster. But the appellant can not complain of the neglect to state a presumption of law against it. We think the effect of the instructions, taken together, was to permit the jury to assume from the manner in which Philbrook was sent, in view of the entire surroundings, the authority to act in the Slater case. While the court did not, in terms, state the rule as to presumptions, it was inferable from the instructions given.

. There is no error in the record, and the judgment is AFFIRMED.