VESTA CLARK, APPELLEE, v. BANKERS ACCIDENT INSURANCE
COMPANY, APPELLANT.

FILED JUNE 23, 1914. No. 17,394.

1. **Appearance.** Where a defendant makes a special appearance to ob-
   ject to the jurisdiction of the court over the person, and in the
   same motion challenges the jurisdiction of the court over the subject
   matter, which latter conclusion is not well founded, this constitutes
   a voluntary appearance in the action.

2. **Insurance: ACTION ON POLICY: VENUE.** An action upon an insurance
   policy is transitory and may be brought against a foreign insurance

corporation in any county in the state in which there may be property of, or debts owing to, defendant, or where the defendant may be found or summoned, or in any county where the cause of action or some part thereof arose, or in a county where any contract or portion of a contract entered into by such insurance company has been violated or is to be performed. Rev. St. 1913, secs. 7616, 7619.

3. ——: ——: EXCLUSION OF EVIDENCE. In an action upon a contract of insurance to be evidenced by a policy to be thereafter issued, the policy (which was afterwards issued, but not delivered to the assured) if offered by defendant, may be admissible in evidence, and in this case it is *held* that it was error to exclude it.

4. ——: ORAL CONTRACT: AUTHORITY OF AGENT. Ordinarily it is within the power of an insurance agent to make an oral contract of insurance, or to agree that the insurance shall be in force after the application is signed, and the premium paid, and before a policy is actually written, unless the assured is, or should be held to be, apprised in some manner, either in the application or otherwise, that the insurance will not be in force until the application is approved at the home office and the policy issued and delivered.

5. ——: BURDEN OF PROOF: SUFFICIENCY OF EVIDENCE. The burden of proof in an action on an accident insurance policy is upon the beneficiary to show that the deceased was killed by an accident. Evidence examined, and *held* to sustain the verdict in this respect.

6. ——: CONTRACT FOR ISSUANCE OF POLICY: FORM AND AMOUNT: PRESUMPTIONS. Generally the parties to a contract of insurance by which a policy is to be issued later will be presumed to intend a policy customarily used for such risk, and the amount of the insurance contracted for will be taken to be that which may be procured at the rates specified in the application and policy, or otherwise published by the insurer.

APPEAL from the district court for Cass county: HARVEY D. TRAVIS, JUDGE. *Affirmed on condition.*

*Byron Clark, C. A. Rawls* and *William A. Robertson,* for appellant.

*Matthew Gering, contra.*

LETTON, J.

This is an action to recover upon a contract of insurance. Plaintiff recovered judgment, and defendant appeals.

Clark v. Bankers Accident Ins. Co.

The deceased was a telephone lineman who lived at Fairbury. The defendant is an Iowa accident insurance company. One Hamilton, who was its duly authorized agent, was doing business in its behalf in Jefferson county. The testimony on behalf of plaintiff is to the effect that on October 27, 1909, C. W. Clark who was visiting his brother, Charles G. Clark, the deceased, had some conversation with Hamilton and with his brother with reference to the latter taking accident insurance. Deceased had some hesitation about doing so, when C. W. Clark inquired of the agent whether he could sign an application for Charles. He spoke to his brother again that night on the subject, and the next day he saw Hamilton and asked him if he had been to see his brother about the insurance; and he then told Hamilton he would pay for the first month's insurance. Hamilton filled out a blank application, to which C. W. Clark signed his brother's name, and for which he paid Hamilton $3. C. W. Clark was asked: "Was there anything said at that time how much the premium would be and the amount of the insurance? A. Well, I understood him to say the insurance was $1,000— there was $500 extra business on it. I didn't know just how that was to be fixed up. Mr. Hamilton said 'I will send this off this afternoon, and it will probably be right back.' I asked him, 'When is this good,' and he said 'Right now,' something to that effect. He gave me a receipt for the money." Afterwards on the same day C. W. Clark told his brother of his action and gave him the insurance receipt, which was accepted and retained until his death. The witness left Fairbury on the 29th about 9 o'clock in the morning, heard of his brother's death while he was in Lincoln, returned to Fairbury the same day, and saw the body at the undertakers. The wrist of the deceased was broken and "the side of his head was mashed." The application was sent to the head office at Des Moines, was approved, and a policy was executed and sent to E. L. Uhe, district manager at Beatrice, under whom Hamilton was working, for delivery to the insured. At this time the company had no information that Charles G. Clark

was dead. The next day they received a notice from Uhe to that effect, and the secretary immediately wired Uhe to return the policy at once. The policy was returned, and afterwards Uhe sent a check for $3 to the plaintiff, with a letter stating that as the application had not reached the home office, and had not been passed upon, the insurance was not in force. Plaintiff then wrote to the company demanding the delivery of the policy, claiming payment for the loss, and returning the $3 check.

This action was begun in Cass county, and a summons was issued and served upon the auditor of state in Lancaster county. Thereupon the defendant filed the following special appearance in the case:

"Now comes the defendant and, specially appearing only for the purpose of objecting to the jurisdiction of the court over it, moves the court to quash the summons and the return of the service thereon for the following reasons: First. The court is without jurisdiction over this defendant because neither the cause of action or any part thereof set forth in plaintiff's petition for specific performance arose in this county. Second. Neither the cause of action or any part thereof arose in this county as set forth in the cause of action in plaintiff's petition for the insurance claimed to be due on account of death by accident. Third. This court is without jurisdiction to issue a summons upon either of the causes of action set forth in plaintiff's petition and cause it to be directed to the sheriff of the county of Lancaster, Nebraska, because the petition was not filed in the proper county to recover upon either of said causes of action. Fourth. Because the petition shows that each of the causes of action arose in the county of Jefferson, Nebraska. Fifth. Because the petition shows that the defendant has a general agent at Beatrice, Nebraska, upon which service of summons in this action could be had in each of said causes of action. Sixth. Because there is no authority in law to serve a summons upon the state auditor in an action against this defendant, which is a foreign corporation, and has a general agent within the state, and by such service acquires no jurisdic-

tion over this defendant as to either of the causes of action
in plaintiff's petition alleged. This special appearance is
supported by the petition of plaintiff on file herein and the
affidavit of Wm. A. Robertson hereto attached and made
a part hereof."

The motion to quash the summons was overruled. In
defendant's answer the objections to jurisdiction were re-
peated with greater particularity; and upon the merits it
pleaded that Hamilton was only a soliciting agent; that
the home office retained the exclusive right to reject or
approve applications; that the application was not signed
or ratified by the deceased; that when the application was
received, approved, and the policy issued and mailed to the
district manager for delivery, defendant was in ignorance
of Clark's death; and that upon learning this fact, and
that he had not authorized the application, the policy was
recalled and canceled; that the application contained a
series of questions required to be answered by the ap-
plicant and signed, and that the material answers were
false and untrue; that the policy was for the sum of $500 in
case of death by accidental means, and provided for a dou-
ble indemnity if death occurred while traveling in a pub-
lic conveyance or when in a burning building. The reply
pleads ratification by the deceased, the truth of the an-
swers in the application, its approval and the delivery of
the policy by being sent to the district manager with di-
rections to deliver, and pleads that the liability was for
$1,000, with $500 additional in case of being killed in a
public conveyance or in a burning building.

As to the special appearance, it consists (1) of an ob-
jection to the jurisdiction of the court over the person of
the defendant based upon the fact that service was had
upon the state auditor, and not upon an agent of the com-
pany; (2) of an objection to the jurisdiction of the court
over the subject matter. The case is governed by the prin-
ciples announced in *Perrine v. Knights Templar's & Ma-
sons' Life Indemnity Co.*, 71 Neb. 267: "An action upon
a benefit certificate or insurance policy is transitory and

96 Neb. 25

not local in its nature, and may be brought in whatever state the company issuing the policy can be found, without any regard to where the contract of insurance was made or the subject thereof was located. The appearance of a defendant, for the sole purpose of objection by motion to the jurisdiction of the court over his person, is not an appearance to the action; but, where the motion also challenges the jurisdiction of the court over the subject matter of the controversy and is not well founded, it is a voluntary appearance equivalent to a service of summons."

If the action were purely a local one, a general appearance would not confer jurisdiction over the subject matter; but, as pointed out in *Insurance Co. v. McLimans & Coyle*, 28 Neb. 653, section 55 of the code "is remedial and not restrictive in its nature," and such an action may be maintained wherever jurisdiction over the person of the defendant may be obtained. *Lillie v. Modern Woodmen of America*, 89 Neb. 1.

Defendant contends that the principles announced in these cases are not applicable here for the reason that the special appearance in this case "is not an objection to the jurisdiction of the court over the subject matter of the action, but is an objection to the jurisdiction of the court over the person of the defendant, and all of the statements of said motion are assignments of the reasons or grounds upon which such motion is based." We are unable to see a distinction in this respect between this and the *McLimans* and *Perrine* cases, and we are unable to distinguish any substantial difference between the motions filed in these cases and that filed in this. We conclude, therefore, that the court acquired jurisdiction over the person by the general appearance, and, the action being transitory, it had jurisdiction of the subject matter, and had, therefore, full power to try and determine the cause.

Defendant complains that the court erred in excluding the written policy, for the reason that as issued it was corroborative of the testimony of defendant's witness Hamilton. We are inclined to the view that the defendant was entitled to the production of this evidence, not only for

this reason, but also to aid the jury in determining what kind of contract the minds of the parties met upon. It is clear from the evidence of both Clark and Hamilton that a policy was to be issued to evidence the contract, and it is shown that this policy was actually issued and mailed to defendant's agent for delivery. The evidence as to the amount of the insurance contract on the part of C. W. Clark is vague and indefinite, and we are satisfied that the ordinary policy for which $2 a month was the regular charge was that which both parties had in mind when the contract was made. This subject will be referred to later.

The jury made special findings of fact to the effect that the application was mailed before the death of Clark, was received at the defendant's home office after the death, and that the officers at Des Moines did not know of the death at the time they mailed the policy for delivery. It is contended that the court erred in not setting aside the verdict and sustaining the motion for a new trial for the reason that the general verdict is contrary to these findings. The remaining assignments may be grouped and considered in connection with the complaint as to the instructions given and refused, and the contention of lack of authority in the agent to contract. In its instruction to agents it is said: "Policies are written at the home office of the company upon receipt of the written application, and take effect when such applications are passed upon, accepted, and policy actually issued." It is shown, however, that no knowledge of these limitations upon the agent's authority was given to either of the Clarks. His act in making the contract was within the apparent scope of his authority, so far as the application showed, and was binding. *Dayton Ins. Co. v. Kelly,* 24 Ohio St. 345. It is true that Hamilton denies that he told C. W. Clark that the insurance began from the time when he paid the premium, but the jury evidently believed Clark upon this point. That it is within the power of an agent to make an oral contract of insurance, or to agree that insurance shall be in force after an application is signed, and the premium paid, and before a policy is actually written un-

less the assured is or should be held to be apprised in some way, either in the application or otherwise, that the insurance will not be in force until the application is approved at the home office of the company and the policy issued, is too well settled to admit of dispute.   See cases cited in note to *Newark Machine Co. v. Kenton Ins. Co.*, 50 Ohio St. 549, 22 L. R. A. 768; *New York Life Ins. Co. v. Babcock*, 104 Ga. 67, 69 Am. St. Rep. 134, and note; *Relief Fire Ins. Co. v. Shaw*, 4 Otto (U. S.) 574; *Hubbard & Spencer v. Hartford Fire Ins. Co.*, 33 Ia. 325, 11 Am. Rep. 125; *Angell v. Hartford Fire Ins. Co.*, 59 N. Y. 171, 17 Am. Rep. 322; *De Grove v. Metropolitan Ins. Co.*, 61 N. Y. 594, 19 Am. Rep. 305; *Walker v. Metropolitan Ins. Co.*, 56 Me. 371; *Phœnix Ins. Co. v. Ryland and Brooks*, 69 Md. 437; *Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*, 19 N. Y. 309; *Dayton Ins. Co. v. Kelly*, *supra*; 1 May, Insurance (4th ed.) sec. 22a.

The complaint that the verdict is not sustained by the evidence because it is not shown that the death of Clark was from an accidental cause, we think, cannot have been seriously made.   Both C. W. Clark and Mrs. Clark testify to the bruises and marks upon the body.   Defendant's counsel, on cross-examination of Mrs. Clark, brought out the fact that her husband was injured about 11 o'clock in the day, and that he died about 12 o'clock, or a little afterwards, that day.   In letters to Mrs. Clark the district manager of defendant spoke of the "recent accident to your husband who had taken a policy in our company but a few hours before his death," and in another letter to her the secretary says, "We very much regret the accident."   C. W. Clark testified that his brother had fallen from a platform upon a telephone pole.   This evidence was stricken as hearsay.   No doubt, the proof would have been stronger if the plaintiff had produced eyewitnesses of the accident, if such there were, or had proved it by circumstantial evidence.   But this would only have entailed the production of evidence to establish a fact which seems to be practically admitted by all parties.   Taking into consideration the admissions contained in the letters, and the

other facts in evidence, we think the proof sufficient to sustain the finding that the deceased came to his death by accidental means.

The complaint that the answers in the application as to Clark's health were false and were material to the risk cannot be sustained. No medical examination was required of an applicant. They were substantially true, and the risk was not affected thereby.

Much that is said in defendant's brief with reference to the contract is sound, provided that the evidence of defendant's witnesses had been found to be true by the jury. It is plain by the verdict that they believe the testimony of Clark and other witnesses for the plaintiff as to what occurred at the time the contract was made. For these reasons, we have taken the verdict as settling the facts to be as testified to by plaintiff's witnesses, and hold that the contract of insurance was complete when the application was approved and the policy issued for delivery. 1 May, Insurance (4th ed.) sec. 45a; *New York Life Ins. Co. v. Babcock. supra.*

With regard to the amount of insurance contracted for, the general rule is that, by an oral contract of this nature, the parties will be presumed to intend the policy customarily used for such risk, and that the amount of the insurance contracted for will be taken to be that which may be procured at the rates published in the application and policy. *Newark Machine Co. v. Kenton Ins. Co.,* 50 Ohio St. 549; *Sproul v. Western Assurance Co.,* 33 Or. 98. In this case it is shown that $1 of the $3 paid was for membership fee, and that $2 of the payment was the regular monthly rate payable in advance for $500 ordinary accident insurance, with a double liability if death occur while the assured is traveling upon a public conveyance or while in a burning building. The application shows the maximum liability is $1,000. Taking the evidence as a whole, including the excluded policy, the contract was evidently $500, with a double liability. The policy should have been admitted in evidence under the principle stated. However, since the only effect of the exclusion was to increase

the amount of the recovery in a definite sum, in order to avoid a new trial the judgment of the district court is affirmed, if the plaintiff within ten days remit the $500 excess, with interest from January 1, 1910, otherwise the judgment will stand reversed.

AFFIRMED ON CONDITION.

REESE, C. J., and FAWCETT, J., not sitting.