T. J. NERTNEY, Appellee, v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Appellant.

**INSURANCE:** Contract in General—Preliminary Insurance—Implied
1 **Authority of Agent.** An insurance company which customarily dates its policies from the *date of the application* for insurance may not deny the implied or apparent authority of its soliciting agent (with power to receive premiums) to enter into a valid preliminary contract of insurance covering the period from the date of the application to the acceptance or rejection of the application, even though the application provides that the company shall not be bound by any act or statement by the agent unless such act or statement is contained in the application.

**CONTRACTS:** Acceptance—Offer and Acceptance by Mail. The tender
2 *by mail* of a blank application for insurance, with the statement by the soliciting agent that the addressee may fill out the blank, sign it, and return it to the agent, and that *"the insurance will be in effect immediately,"* constitutes an offer of preliminary insurance pending the acceptance or rejection of the application, and becomes binding from the moment the properly executed application is duly deposited *in the mail.*

**INSURANCE:** Agents—Agent for Both Insurer and Insured—Effect.
3 The fact that the soliciting agent of an insurance company is also the rental agent of the owner of the property sought to be insured, presents no such inconsistent agencies as to disqualify the said agent from entering into a valid contract for preliminary insurance on behalf of the company.

**Headnote 1:** 26 C. J. p. 100 (Anno.); 32 C. J. p. 1099. **Headnote 2:** 13 C. J. p. 300. **Headnote 3:** 32 C. J. p. 1056.

*Appeal from Butler District Court.*—C. H. KELLEY, Judge.

MAY 12, 1925.

ACTION upon a preliminary contract of insurance. There was a verdict for the plaintiff, and from the judgment rendered thereon, defendant appeals.—*Affirmed.*

*C. G. Burling* and *Stout, Rose, Wells & Martin,* for appellant.

*Healy & Breen* and *Hanson & Schaupp,* for appellee.

VERMILION, J.—The facts are not in dispute. The Vaughn I. Griffin Company, a copartnership, of which Vaughn Griffin and G. W. Finn were members, was engaged in the insurance

1. INSURANCE: contract in general: preliminary insurance: implied authority of agent.

business at Mason City. Griffin was the agent of the appellant company. As shown by his contract of agency and his certificate of appointment, Griffin was agent of appellant to solicit applications for insurance against loss or damage by fire on farm property in Cerro Gordo County and vicinity, for submission to the appellant for approval or rejection, and to receive premiums.

The appellee resided at Ottawa, Illinois, and owned a farm in Cerro Gordo County. On March 28, 1921, he wrote to Finn, saying that he wanted to put $1,500 insurance on the barn on his farm. There was some correspondence over the matter, during the course of which two applications were sent to appellee, to be filled out and signed, which he refused to do, for reasons not material here. On April 15, 1921, an application for the insurance in the appellant company was sent him in a letter signed by Griffin, which said:

"You can fill out the blank application on the typewriter if you choose, sign same and return to us. The insurance will be in force immediately, but the policy may not be issued for two or three days."

The appellee filled out and signed the application, and put it, with a check for the premium, in the mail, properly stamped,

and addressed to the Vaughn I. Griffin Company at Mason City, at 5 o'clock on April 16, 1921. The application was headed with the provision, "Subject to the approval of said company and to the terms and conditions hereof and of the policy that may be issued hereon," and contained the further provision:

"The company shall not be bound by any act done or statement made to or by any agent, or other persons, which is not contained in this, my application, and this application shall be deemed and considered a part of the policy to be issued hereof if accepted by the company."

The application and check were received by the Griffin Company on the morning of April 18th. Griffin on the same day mailed the application, with a check for the premium, less his commission, to a general agency of the appellant company at Omaha. Later on that day he received a telegram from appellee, notifying him that the barn had been destroyed by fire. The fire occurred on the night of Saturday, the 16th, or the morning of the 17th, and after appellee had mailed the application to the Vaughn I. Griffin Company, but before it was received by that company. Griffin notified the appellant's agency at Omaha of the fire. On April 19th, the agency at Omaha notified the Vaughn I. Griffin Company by mail that the application was refused, for the reason that they did not insure farm outbuildings except in connection with the balance of the property; and the check for the premium was returned to the Griffin Company.

The action is predicated on the contention that the insurance was effective from the time of the execution and mailing of the application by appellee, under the agreement in the letter of Griffin that the insurance would be in force immediately. The appellant denied the authority of Griffin to so agree. The question of the authority of the agent is the principal question in the case.

I. It is plain that Griffin had no express authority, in respect to insurance on farm buildings, to do more than take applications therefor, to be submitted to the company. Did he have implied or apparent authority to make a valid agreement for preliminary insurance, effective on the signing and forwarding of the application and until the application should be ac-

cepted or rejected by the company? The question here is not as to the authority of the agent to make a valid contract of insurance covering the full term for which the insurance was applied for, but as to his implied or apparent authority to make a valid preliminary contract of insurance, covering the time necessary for the forwarding of the application to the company, and its acceptance or rejection. Implied authority is said to be actual authority circumstantially proved,—the authority which the principal intended the agent to possess. Apparent authority is not actual authority, but is such as the principal holds the agent out as possessing. *Koivisto v. Bankers & Merch. F. Ins. Co.*, 148 Minn. 255 (181 N. W. 580). That the application for the insurance for the full contemplated term was, by its express terms, subject to the company's acceptance or rejection, does not, we think, control upon the question of the agent's authority to make a preliminary contract of insurance, pending the acceptance or rejection of the application by the company. Nor, if the agent had implied or apparent authority to make such a preliminary contract of insurance, would the statement in the application that the company should not be bound by any act done or statement made by any agent and not contained in the application, operate to relieve the company from such a contract. Section 1750, Code of 1897 (Sections 9003, 9004, Code of 1924); *Liquid Carbonic Acid Mfg. Co. v. Phoenix Ins. Co.*, 126 Iowa 225.

It is an admitted fact that, if the application had been accepted, the policy issued in pursuance thereof would have covered the risk from the date of the application. It was shown that it was the general custom in the locality to so date policies issued on applications, and that Griffin had knowledge that the defendant company, in issuing policies or applications for insurance on farm buildings, so issued them, as to cover the risk from the date of the application. It was also shown that, while Griffin had been previously employed by another local agency of the defendant company, he had assisted in taking an application for farm insurance, and had agreed that the insurance should become effective immediately; and that the policy issued by the company six weeks later covered the risk from the date of the application.

Where the policy covers the risk from the date of the application, it is apparent that the insured pays for insurance for the stipulated period beginning with the date of the application,—not the date of its acceptance. No one would be expected to take out insurance for a period of time that had already elapsed. But, unless there is a valid preliminary contract of insurance covering the time between the making of the application and its acceptance or rejection, that is what every insured who receives such a policy is required to do. The injustice of saying that, on the acceptance of the application, the insured has had protection from the prior date where no loss has occurred, where it is also said that he is not protected if a loss did occur, is plain. But, if the agent had no authority to make a contract for preliminary insurance covering the interim between the making of the application and its acceptance or rejection by the company, there was no insurance covering that time. The company has a right arbitrarily to refuse to accept the application. Of course, where the application is accepted or rejected before a loss, no question can arise as to whether the property was covered. But where the loss occurs after the date of the application and before its acceptance, may the company question the authority of its agent who made a contract for preliminary insurance covering that period, when, had the application been accepted, the policy issued would have covered it, and the insured would have paid for such protection? May it, in such case, say to the insured:

"If no loss has occurred, your property was covered for the elapsed time, and there was a binding contract for preliminary insurance for which you must pay; but if a loss has occurred, our agent had no authority to make a contract for preliminary insurance, and you had no insurance?"

If the company may pay only at its option for a loss occurring after the making of the application and before its acceptance, notwithstanding the agreement of the agent for preliminary insurance, the insured, manifestly, has no protection during that time; yet, if he procures insurance, he pays for such protection. We are not to be understood as saying that, in the absence of any agreement for preliminary insurance covering the interim between the making of the application and the ac-

ceptance or rejection of it by the company, the mere fact that when, or if, the application is accepted, the policy would cover the risk for that time, would create a liability for a loss so occurring, where the application was not accepted. But we are of the opinion that, when it is shown that it is the custom of the company, upon accepting the application, to issue its policy covering the period from the date of the application, its agent taking the application has implied or apparent authority to make a valid preliminary contract of insurance, effective from the making of the application until its acceptance or rejection.

While the precise question has not before been presented to us, our conclusion is in accord with the principles announced in former decisions. *Miller & Co. v. Phoenix Ins. Co.*, 27 Iowa 203; *Slater v. Capital Ins. Co.*, 89 Iowa 628; *DeBolt v. German Am. Ins. Co.*, 181 Iowa 671; *Liquid Carbonic Acid Mfg. Co. v. Phoenix Ins. Co.*, supra; *Funk v. Anchor F. Ins. Co.*, 171 Iowa 331; *Johnson v. Farmers Ins. Co.*, 184 Iowa 630. Of the cases cited on behalf of appellant in support of the contrary contention, some were decided before the enactment of Section 1750 in its present form; others relate to the authority of a soliciting agent to make a contract of insurance for the full term; and still others, as to what knowledge on the part of such an agent will be binding on the company. Our conclusion is supported by decisions more directly in point in other jurisdictions.

It is often said that an insurance company must act through agents, who deal directly with those whose property it insures. They look to and rely upon the agent as the full and complete representative of the company in all that is said and done in making the contract, and have a right to so regard him.

"The powers of the agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." *Union Mut. L. Ins. Co. v. Wilkinson*, 80 U. S. 222 (20 L. Ed. 617).

*Koivisto v. Bankers & Merch. F. Ins. Co.*, supra, is a case on all fours with the one at bar, save that the agent's agreement that the insurance should go into effect at once was oral, and that the loss occurred after the company had notified the agent

of its rejection of the application, but before he so informed the insured. It was there said:

"The contract Mattson [the agent] made with plaintiff was directly connected with and essential to the transaction of the business in hand. It served substantially the same purpose as a binding slip. If a policy was issued, it would, of course, supersede the preliminary contract. Until it was issued, or the application was rejected and the applicant notified, so that he would have an opportunity to get insurance elsewhere, we think it should be presumed, in view of its practice in dating policies, that defendant intended that its agents should have power to provide for the protection of the applicant by a contract such as Mattson made with plaintiff."

So eminent an authority as Chief Justice Taft, when on the Circuit Court of Appeals, in *Greenwich Ins. Co. v. Waterman*, 4 C. C. A. 600 (54 Fed. 839), approved an instruction to the effect that, if there was a well defined usage by which local agents of foreign insurance companies could make binding contracts on applications for insurance, to attach the same day, an agent could so bind the company, whatever his private instructions; and said that a local agent would have apparent authority to bind the company in accordance with such usage, if reasonable, and that it did not necessarily show that a local agent had no authority to make preliminary binding contracts of insurance because he was without power to issue policies.

In *Halle v. New York Ins. Co.* (Ky.), 58 S. W. 822, where the application provided that no one except the president, vice president, or actuary was authorized to make, alter, or cancel contracts, it was said:

"These restrictions in the application on the power of the agent do not affect the authority of the general agent to do what those dealing with him were authorized to believe he had the right to do."

In *Hardwick v. State Ins. Co.*, 20 Ore. 547 (26 Pac. 840), where the action was based upon an alleged preliminary oral contract by which it was agreed that the insurance should be effective from the date of making the contract, it was said:

"The fact that the agent may not have authority to issue the policy, which is simply the written evidence of the contract,

does not of itself prevent him from making a valid preliminary oral contract to insure; and it is said in such cases the courts will take judicial notice of the usage to make such contracts date from the application.''

In *Clark v. Bankers Acc. Ins. Co.*, 96 Neb. 381 (147 N. W. 1118), the court said:

''That it is within the power of an agent to make an oral contract of insurance, or to agree that insurance shall be in force after an application is signed and the premium paid, and before a policy is actually written, unless the assured is or should be held to be apprised in some way, either in the application or otherwise, that the insurance will not be in force until the application is approved at the home office of the company and the policy issued, is too well settled to admit of dispute.''

See, also, *Palm v. Medina County Mut. F. Ins. Co.*, 20 Ohio 529; *Starr v. Mutual L. Ins. Co.*, 41 Wash. 228 (83 Pac. 116).

What has been said disposes of the questions presented by most of the assignments of error, including those predicated on the refusal of the court to strike portions of the petition, and on the instructions to the jury.

II. It is said that, by the terms of the preliminary contract for insurance, as evidenced by Griffin's letter, it did not become effective until the application was actually received by the Vaughn I. Griffin Company. The language is:

''You can fill out the blank application on the typewriter if you choose, sign same and return to us. The insurance will be in force immediately.''

The general rule with respect to the acceptance of an offer by mail is that, where one person makes an offer, and requires or authorizes, either expressly or impliedly, the acceptance to be sent by mail, the acceptance is communicated, and the contract is complete, from the moment the letter accepting the offer is mailed; and a request or authorization to communicate the acceptance by mail is implied where the post is used to make the offer, or where the circumstances are such that it must have been within the contemplation of the parties that, according to the ordinary usages of mankind, the post might be used to communicate the acceptance. 13 Corpus Juris 300. There is nothing in the

2. CONTRACTS: acceptance: offer and acceptance by mail.

language of the letter from which it can be inferred that the insurance was only to be effective upon the actual receipt of the application by the agent. We think the construction most favorable to appellant of which it is susceptible is that it should be effective when the offer of insurance in the appellant company was accepted by appellee; and this would be when the application was signed and properly mailed. That this was the intention of Griffin, and that appellee was justified in so believing, is apparent from the language of a letter inclosing one of the earlier applications that was not accepted by appellee, in which he said:

"Your policy will be in force from the day the application is signed by you."

III. It is said that Griffin, or the Vaughn I. Griffin Company, was also the agent of the appellee, of which fact the appellant was not informed; and that, therefore, his act in entering into a preliminary contract of insurance did not bind the appellant. It appears that, prior to the formation of the Vaughn I. Griffin Company, Finn had been the agent of appellee for the renting of the farm on which the barn in question stood, and that that business was taken over by the partnership. It is well settled that an agent for an insurance company who is interested as an owner of the insured property, or as a stockholder and officer of a corporation owning it, cannot bind his principal, who is ignorant of the fact, by a contract of insurance. Such an act violates the principle that an agent cannot be permitted to put himself in a position where his own interests are antagonistic to those of his principal, and cannot, as agent for his principal, do or transact business for his own benefit. *Arispe Merc. Co. v. Capital Ins. Co.*, 133 Iowa 272, and authorities there cited. And as a general rule, the same person cannot act as agent for both the company and the insured, unless he does so with the consent of both parties; and, if he does so act, the contract of insurance may be avoided by the company. 32 Corpus Juris 1055. But a dual agency does not arise by reason of the fact that the agent is the employee of the insured as to matters having no relation to the insurance. 32 Corpus Juris 1055.

3. INSURANCE: agents: agent for both insurer and insured: effect.

In *Northrup v. Germania F. Ins. Co.,* 48 Wis. 420 (4 N. W. 350), the agent of the insurance company had been employed by the owner to collect rents, pay taxes, and find purchasers for his property, including that insured; and at the time the insurance was written, the agent was given the key to one of the buildings, and directed to take charge of and see to all the property in the building. A nonsuit was granted on the ground that the evidence showed the agent of the company to have been also the agent of the insured when he wrote the policy. This ruling was reversed on appeal, and it was said that it was a question for the jury. The complaint in the instant case is not that the court did not submit the question of dual agency to the jury, but that a verdict for the defendant should have been directed on that ground.

In *British America Assur. Co. v. Cooper,* 6 Colo. App. 25 (40 Pac. 147), an agreed statement of facts showed that the agents of the insurance company had acted for the plaintiff in overseeing the construction of a building, and upon its completion, were employed to lease it and collect the rents. The owner directed them to have it insured, upon its completion. This they did not do, but informed him that they were insurance agents; whereupon he directed them to insure the building in their companies, and this they did. Of this situation the court said:

"Now, in what degree did this last order constitute them his agents in the insurance transaction? It seems to us to amount to nothing more than an application to them, as insurance agents, for insurance upon his property. * * * And, disembarrassing this case of an agency which did in fact exist, but which did not in any manner concern insurance, or involve them in any obligation inconsistent with their duty to the defendant, we are unable to discover anything in the plaintiff's direction more than an informal application for insurance, in conforming to which they acted solely as defendant's agents."

It was held that the agreed statement of facts showed that the agents who wrote the policy were not the agents of plaintiff, so as to render notice to them after the policy was issued, effective as notice to him. It should be noted that, in the cited case, the agreed statement of the facts related only to the pleadings

as they existed after a demurrer had been sustained to a division of the answer alleging that the agents were general agents of the plaintiff, fully empowered to procure insurance for him, and that the insurance in question was procured in pursuance of such authority. The case was reversed for error in sustaining the demurrer. See, also, *Shutts v. Milwaukee Mech. Ins. Co.,* 159 Mo. App. 436 (141 S. W. 15) ; *Dibble v. Northern Assur. Co.,* 70 Mich. 1 (37 N. W. 704) ; *Wilson v. German-American Ins. Co.,* 90 Kan. 355 (133 Pac. 715).

The employment of the Griffin Company by appellee was solely in respect to the renting of his farm, and had no relation to the matter of insurance. Negotiations for the insurance began, not by appellee's directing his agent to procure insurance for him, but by an application to Finn, as an agent of insurers. He wrote Finn:

"You informed me that you were going in the insurance business and I trust you already have a company. I want to put $1,500 on that barn, a three-year contract. * * * If you are in a position to get commissions please do so, if not, I will attend to it from here."

Throughout the negotiations, this relationship was maintained. The appellee was acting for himself, in procuring insurance as he would from any other agent; the Griffin Company was representing the insurer, as it would with any other applicant for insurance. Unless it must be said that the employment by the assured of the agent soliciting or writing the insurance in any capacity whatever in relation to the insured property creates such a dual agency as to render the policy voidable at the option of the company, we think the employment of the Griffin Company to rent the farm did not have that effect. No authority to which our attention has been called goes so far.

We think there was no error in overruling appellant's motion for a directed verdict; and it follows that the judgment must be and is—*Affirmed.*

FAVILLE, C. J., and EVANS, ARTHUR, and ALBERT, JJ., concur.